ANSTEAD, J.
This matter originally came before the Court for consideration of a proposed rule concerning the competency and qualifications of lawyers appointed to represent indigent defendants in capital cases where the services of the public defender are not available. In 1998 we deferred consideration of this issue pending legislative study. See In re Amendment to Fla. Rules of Judicial Admin., 711 So.2d 1148, 1149-50 (Fla.1998). We now address the issue after receipt of a unanimous recommendation by a legislative study commission that this Court, rather than the legislature, adopt standards for lawyers in capital cases.[2] Today we take an important step in ensuring the integrity of the judicial process in capital cases by adopting a rule of criminal procedure to help ensure that competent representation will be provided to indigent capital defendants in all cases.
In its formal report, the Commission on Legislative Reform of Judicial Administration declared:
Competent counsel to represent defendants in cases where the death penalty may be imposed is essential to assure that the death penalty is imposed fairly and without undue delay. In 1989 the American Bar Association promulgated minimum standards for counsel in death penalty cases, urging states to adopt similar rules or standards. To date, of the 40 states with death penalty statutes, 19 have instituted some form of minimum guidelines or standards or have created an agency to promulgate standards of the appointment and representation of counsel at either the trial or appellate level or both in capital cases. Florida is the largest state without any rule or legislation imposing minimum standards on counsel appointed to represent defendants in death penalty cases.
*612 Commission Report at 4. This Court has a continuing obligation to ensure the integrity of the judicial process in all cases. Our overview is especially important in death penalty cases. Hopefully, few would disagree that capital cases are among the most intricate and complex cases in the legal system today. As one commentator notes: “They involve a unique separate sentencing phase, a complex body of law that is specific to death cases, and complicated and convoluted doctrines that limit appellate review for errors committed at trial.” Michael D. Moore, Note, Tinkering with the Machinery of Death: An Examination and Analysis of State Indigent Defense Systems and Their Application to Death-Eligible Defendants, 37 Wm. & Mary L.Rev. 1617, 1639 (1996). Recently, in recognition of our responsibility, we addressed a concern over the qualifications of judges handling death penalty eases. See In re Amendment to Fla. Rules of Judicial Admin., Rule 2.050(b)(10), 688 So.2d 320 (Fla.1997). There, we added a new rule to the Florida Rules of Judicial Administration to ensure that judges presiding over capital cases would possess “the experience and training necessary to handle the unique demands of such proceedings.” Id. at 320. Today, we act on the same concerns that prompted our earlier action.
Based on our ongoing concerns as to the quality of the judicial process in capital cases, this Court in 1997 appointed a select committee of highly qualified and experienced judges and lawyers to study and recommend for our review minimum standards to ensure the competency of court-appointed lawyers in capital cases.[3] The committee provided us with an initial set of proposed standards which we identified in an opinion, In re Proposed Amendment to Florida Rules of Judicial Administration—Minimum Standards for Appointed Counsel in Capital Cases, 22 Fla. L. Weekly S407 (Fla. July 3, 1997), wherein we directed that the proposed standards be published in The Florida Bar News. Numerous constructive comments and concerns were subsequently received and were duly forwarded to the committee. The committee then redrafted the proposed minimum standards in a constructive effort to address the comments. After exhaustive work, and based largely upon standards already in place around the country and within the various judicial circuits in this State, the committee produced a rule which responds to the competing concerns of high standards and practicality in application. This Court then heard oral arguments in which interested persons were again provided an opportunity to address the proposed standards.
Today we accept the committee’s recommendations, with two minor exceptions. The majority of comments focused on standard (d), which, as initially proposed by the committee, mandated the appointment of two lawyers during the trial proceedings.[4] Although we are in agreement with the committee’s legitimate concerns in recommending this provision to ensure adequate and competent representation for capital defendants, we also agree with the views expressed by others that the trial court should retain some supervisory authority over the decision to appoint co- *613 counsel.[5] Therefore, while the standards we adopt today provide that two lawyers should ordinarily be appointed, we leave the ultimate decision to the discretion of the trial court.[6]
We also recognize that it is possible that some counties in the state may not have enough lawyers available who meet the technical requirements of the standards. Therefore, we are adding to the proposed standards a provision which permits trial courts in exceptional circumstances to appoint attorneys who may not satisfy the technical requirements of the standards, but in whom the appointing trial court has complete and unqualified confidence as to the quality of representation.[7]
Under our procedural and adversarial system of justice, the quality of lawyering is critical. For that reason, trial judges responsible for the appointment of counsel in eases where the very life of the defendant is at risk must take care to appoint well-qualified lawyers. As Justice Ehrlich has earlier noted with respect to appellate counsel in capital cases:
Appointment of appellate counsel for indigent defendants is the responsibility of the trial court. We strongly urge trial judges not to take this responsibility lightly or to appoint appellate counsel without due recognition of the skills and attitudes necessary for effective appellate representation. A perfunctory appointment of counsel without consideration of counsel’s ability to fully, fairly, and zealously advocate the defendant’s cause is a denial of meaningful representation which will not be tolerated. The gravity of the charge, the attorney’s skill and experience and counsel’s positive appreciation of his role and its significance are all factors which must be in the court’s mind when an appointment is made.
Wilson v. Wainwright, 474 So.2d 1162, 1164-65 (Fla.1985). This Court has an inherent and fundamental obligation to ensure that lawyers are appointed to represent indigent capital defendants who possess the experience and training necessary to handle the complex and difficult issues inherent in death penalty cases. This Court, over the years, has reviewed countless ineffective assistance of counsel claims *614 alleging incompetence of counsel at both the trial and appellate levels. This experience demonstrates that we cannot ignore the compelling need to focus attention on the initial process whereby private counsel are appointed, in order to improve the quality of the process and minimize later claims of incompetency.
While we would be naive in believing we could completely eliminate the problem by enacting a rule, we can at least act constructively in formulating a process that gives special attention to our concerns. We do so today to ensure that the appointive process is specifically designed to provide for the appointment of competent counsel. The responsibility of the trial court to ensure that only well qualified counsel are appointed is central to this process. The integrity of the process and our society’s confidence in the outcome of capital proceedings rests on our allegiance and commitment to the highest standards of our justice system. We call upon all judges and lawyers, prosecutors and defense counsel alike, to apply the highest standards of professionalism and ethics to their roles and responsibilities in capital litigation.
We have also determined, preliminarily, and in accordance with the views expressed by Justice Lewis in his concurring opinion, that these standards should be extended to lawyers practicing law within the offices of the public defenders in order to ensure that competent counsel is provided to all indigent capital defendants. However, we recognize that we have not previously announced our consideration of this issue or asked for comments on such an extension of the rule from those who will be affected, including the public defenders of Florida. For this reason, we direct all interested persons to file comments on this issue by December 31, 1999, so that we may consider this issue and determine the need for any oral presentations well in advance of the July 1, 2000, effective date of this rule.[8]
Accordingly, together with the changes discussed and specified herein, the Court hereby adopts Florida Rule of Criminal Procedure 3.112, Minimum Standards for Attorneys in Capital Cases.[9] The new rule setting forth the Minimum Standards as revised by this Court is attached as an appendix to this opinion along with the comments of the committee. This rule shall become effective and apply to the appointment of counsel made after July 1, 2000. This delay in implementation is necessary in order to give the circuit courts a fair opportunity to prepare for and comply with the rule and to give attorneys a fair opportunity to meet the educational requirements of the rule. We urge The Florida Bar and other organizations involved in criminal justice to accept the responsibility for making educational opportunities available in order to qualify attorneys for capital litigation. Of course, we emphasize that these standards only apply to capital cases in which the State is seeking the imposition of the death penalty. They need not be applied in cases where the State has formally renounced any intention to seek that penalty.
It is so ordered.
*615 HARDING, C.J., and SHAW, PARIENTE and QUINCE, JJ., concur.
LEWIS, J., concurs specially 'with an opinion, in which SHAW, ANSTEAD, PARIENTE and QUINCE, JJ., concur.
WELLS, J., concurs in result only.

. See Report of the Commission on Legislative Reform of Judicial Administration (hereinafter Commission Report). The Commission "unanimously recommends to the Legislature that the matter of standards be left to the court to adopt.” Commission Report at 6.

. The Court wishes to express its appreciation to those who submitted comments and advice concerning the rule adopted today. We are especially appreciative of the work of the distinguished members who researched and prepared the proposed standards: Judge Philip J. Padovano, Judge Susan Schaeffer, Judge Joseph P. Farina, State Attorney Jerry Hill, Public Defender Marion Moorman, Carey Haughwout, Esq., and Professor John F. Yet-ter.

. As initially proposed by the committee, this standard was identified as Minimum Standard G, which required trial courts to appoint both lead counsel and cocounsel in all cases in which the death penalty was sought. See In re Proposed Amend. to Rules of Judicial Admin., 22 Fla. L. Weekly at S407. In conforming the standards to the rules of criminal procedure, however, Minimum Standard G has been renumbered as paragraph (d).

.For example, the Commission on Legislative Reform of Judicial Administration recommended that two counsel be appointed upon a showing of good cause. The Commission Report states:
There is at present no requirement that two counsel be afforded to defendants facing the imposition of the death penalty. Public Defenders who appeared before the commission and the Capital Collateral Crimes Representative who addressed the commission all explained that the complex nature of the sentencing phase of a death penalty case made appointment of two counsel, one to handle the guilt phase and one to handle sentencing, a matter of effective representation of the defendant. The Deputy Attorney General also indicated that a two-lawyer requirement was appropriate and would be in the state's interest. Judge Belvin Perry, commission member and Chief Judge of the Ninth Judicial Circuit, told the commission that not all cases required two counsel, although most of the testimony indicated that if a case were going to trial, two counsel were essential.
Commission Report at 6.

. In determining whether appointment of co-counsel is needed, trial courts should consider all relevant circumstances of the particular case, as well as the practices of the public defender and state attorney's offices in allocating resources to capital cases. In exercising discretion, trial courts should consider, for example, whether a defendant, if represented by the public defender’s office, would have the same resources available. Capital defendants, who by virtue of conflict or other reason, must be represented by appointed private counsel, should, of course, receive no less resources for their defense than those defendants represented by the public defender.

. See American Bar Association Guidelines for the Appointment and Performance of Counsel in Death Penalty Cases 57, 63 (1989) ("These attorneys should receive appointments if the appointing authority is satisfied the defendant or inmate will be provided with the same quality of representation as clients represented by attorneys who met the experiential criteria.”).

. We recognize that extending the minimum standards to the public defenders will require appropriate revision of the standards announced herein. The necessity and extent of the changes will depend, in large part, on the comments and input we receive by the date specified in this opinion.

. We also concur in the views expressed by Justice Lewis in his separate opinion that we have an obligation to investigate and consider establishing standards for all counsel, including public defenders, privately retained counsel, and others who represent capital defendants during any phase of the proceedings. For that reason we are requesting the select committee previously appointed to assist us to reconvene, and after appropriate investigation and study, to make recommendations to this Court as to whether we should adopt additional standards as suggested by Justice Lewis. All persons having an interest in this issue should be in contact with the select committee.