PER CURIAM.
In our April 14, 2000 opinion in this case, we proposed amendments to rules 3.851 (Collateral Relief After Death Sentence Has Been Imposed and Affirmed on Direct Appeal), 3.852 (Capital Postconviction Public Records Production), and 3.993 (Forms Related to Capital Postconviction Records Production). We also proposed a *533 new rule that would require real-time transcription of all trials in which the State seeks the death penalty and rule 3.851 proceedings. See Amendments to Florida Rules of Criminal Procedure 3.851, 3.852 & 3.993, 772 So.2d 448 (Fla.2000)(eorrected opinion at 772 So.2d 512). With one exception, we postpone the adoption of new rules governing capital postconviction proceedings because, after receiving comments and hearing oral argument, we have been persuaded that further consideration and study is required.[1]
Our original proposals were designed to “eliminate those capital postconviction procedures that have historically created unreasonable delays in the process.” See id. at 489. Together, the proposed amendments would create a “dual-track” system similar to that contained in the Death Penalty Reform Act of 2000, chapter 2000-3, Laws of Florida. Like the direct appellate process, the postconviction process would begin immediately after the imposition of the death sentence. Within fifteen days of sentencing, collateral counsel would be appointed under proposed rule 3.851 and the production of public records would begin under proposed rule 3.852. This design was meant to allow postconviction counsel the opportunity to immediately begin the investigation of the case and have access to the necessary public records, so that, as proposed, the motion for postconviction relief could be filed within 180 days after this Court issued its mandate on direct appeal.
In proposing these amendments, we expressed concern that if sections 119.07(3)(b), and 119.07(3)(i), Florida Statutes (1999)[2], which exempt certain records from chapter 119 disclosure, remained in place, the proposed capital postconviction procedures would not function as intended. We feared that the subject exemptions, which the Court has held do not end until the conviction and sentence become final after direct appeal,[3] could preclude collateral counsel from effectively investigating potential postconviction claims immediately upon appointment. See id. at 489-490. With this concern in mind, the Court called on the Legislature to assist it in resolving the situation.
When the regular legislative session ended with the exemptions (as applied to capital defendants) intact, we proposed revised rules that extended the time for filing an initial rule 3.851 motion to one year after this Court’s mandate issues on direct appeal. We also proposed an additional subdivision to rule 3.852 providing that after mandate issues on direct appeal, records identified as exempt under the subject exemptions would be unsealed and forwarded to the records repository. Amendments to Florida Rules of Criminal Procedure 3.851, 3.852, and 3.993, 772 So.2d 512 (Fla.2000)(published order). Both the original and revised proposals were published in The Florida Bar News, and interested persons were given until June 1, 2000 to file comments. Sixteen comments addressing the Court’s proposals were filed.
After careful consideration of these comments and hearing oral argument on the proposed rules, the Court has determined that it must postpone adoption of new rules governing capital postconviction proceedings until it can thoroughly consider a *534 number of critical issues and concerns. For example, before proceeding with new rules, we must give adequate consideration to the Solicitor General’s suggestion that this Court has authority to adopt a rule of discovery requiring disclosure of records prior to the conviction and sentence of death becoming final, notwithstanding the continued existence of the public records exemptions discussed above. Another issue of utmost concern is how to ensure the availability of qualified postconviction counsel to handle the increased caseloads that likely will result from the adoption of a dual-track system. This concern appears to be directly impacted by statutes governing the compensation of and scope of representation by registry counsel. We also must address critical issues regarding what constitutes an adequate postconviction motion under rule 3.851. Although it did not use the term “fully pled,” our proposal contemplated a rule 3.851 motion sufficiently pled to put the parties and the Court on notice of the issues raised and which of those issues require an evidentia-ry hearing. However, judging from the views expressed in the comments and at oral argument, our intent in this regard was less than clear from the rule as proposed. Accordingly, more consideration and revision of the requirements of an adequate motion is required. The Court also must develop procedures to govern postconviction proceedings once a death warrant has been signed. Further consideration likewise is warranted for a number of serious concerns raised as to the appropriateness of the time limits contained in the proposed rules.
The need to adequately consider these and other issues precludes us from adopting new rules at this time. See In re Rules Governing Capital Postconviction Actions, 763 So.2d 273 (Fla.2000)(published order). However, we reiterate that the current rules governing capital postconviction proceedings were revived by our decision in Allen v. Butterworth, 756 So.2d 52 (Fla.2000), and those rules will remain in effect until this Court adopts new ones.
Although not necessary to the adoption of new rules, we also intend to explore other issues we feel are vitally important to the streamlining and betterment of the capital postconviction process. The first is whether we should create a statewide roster of trial judges qualified to try capital cases. This Court already has mandated a training course on capital cases for circuit judges that preside over those cases. Based on the comments, a statewide roster of these trial judges also may be needed. We have asked the Morris Committee to consider this issue and make recommendations to the Court by October 1, 2000.
The Court also is considering extending its recently adopted minimum standards for conflict counsel in capital cases to public defenders, collateral counsel, and private counsel who handle capital cases. See In re Amendment to Florida Rules of Criminal Procedure-Rule 3.112 Minimum Standards for Attorneys in Capital Cases, 759 So.2d 610 (Fla.1999). Proposed amendments to rule 3.112 were published for comment in the June 15, 2000 issue of The Florida Bar News, with comments due July 17, 2000.
Finally, although as explained above, there are serious obstacles that must be overcome before the majority of our proposed rules can be adopted, there is an important step toward improving the system which can be taken immediately. We hereby adopt a new rule of judicial administration requiring the chief judge of each circuit to enter an administrative order developing and implementing a circuit-wide plan to expedite the preparation of transcripts in all cases in which the death penalty is sought and in capital postconviction proceedings. Previously, we proposed a rule that would require the State Attorney to obtain and pay for real-time court reporting services in such cases. While the comments and arguments of interested persons reveal agreement that the preparation of transcripts has been a major source of unnecessary delay in capital *535 cases and that real-time transcription of capital trials and postconviction proceedings could remedy this situation, we are aware that this technology is not currently available in all circuits and that other measures, such as the use of text editors or alternating court reporters and the management of court reporter workloads, may be necessary to expedite the preparation and finalization of transcripts. We also have been persuaded that it should be the circuit court’s responsibility, not the State Attorney’s, to ensure that such measures are taken. Accordingly, we adopt new subdivision (i) to Rule 2.070, Court Reporting, as follows:
(i)Court Reporting Services in Capital Cases. On or before January 1, 2001, the chief judge, after consultation with the circuit court judges in the circuit, shall enter an administrative order developing and implementing a circuit-wide plan for court reporting in all trials in which the state seeks the death penalty and in capital postconviction proceedings. The plan shall require the use of all measures necessary to expedite the preparation of the transcript, including but not limited to:
(1) where available, the use of a court reporter who has the capacity to provide real-time transcription of the proceedings;
(2) if real-time transcription services are not available, the use of a computer-aided transcription qualified court reporter;
(3) the use of scopists, text editors, alternating court reporters, or other means to expedite the finalization of the certified transcript; and
(4) the imposition of reasonable restrictions on work assignments by employee or contract court reporters to ensure that transcript production in capital cases is given a priority.
We have included this matter in the Rules of Judicial Administration rather than the Rules of Criminal Procedure, as recommended by the Rules of Judicial Administration Committee, because although it applies only in a limited class of criminal cases, it mandates a function to be carried out by the chief judge of each circuit in his or her administrative capacity. It also applies to trial-level proceedings as well as postconviction proceedings and therefore does not logically belong in proposed rule 3.851. This new subdivision will become effective upon issuance of this opinion.
It is so ordered.
SHAW, HARDING, PARIENTE, LEWIS and QUINCE, JJ„ concur.
WELLS, C.J., concurs with an opinion, in which HARDING and PARIENTE, JJ., concur.
ANSTEAD, J., concurs in result only.

. We have jurisdiction. Art. V, § 2(a), Fla. Const.

. See § 119.07(3)(b), Fla. Stat. (1999) (exempting "active criminal investigative information”); § 119.07(3)(Z), Fla. Stat. (1999) (exempting records prepared by an agency attorney exclusively for civil or criminal litigation until the conclusion of litigation); § 119.01 l(3)(d)(2), Fla. Stat. (1999) (providing that criminal investigative information is considered "active while such information is directly related to pending prosecutions or appeals ”) (emphasis added).

, See State v. Kokal, 562 So.2d 324, 326-27 (Fla. 1990) (explaining that these statutory exemptions do not end until the conviction and sentence become final after direct appeal).