820 So.2d 185 (2002)
IN RE AMENDMENT TO FLORIDA RULES OF CRIMINAL PROCEDURERULE 3.112 MINIMUM STANDARDS FOR ATTORNEYS IN CAPITAL CASES.
No. SC906 35.
Supreme Court of Florida.
February 21, 2002.
Rehearing Denied June 18, 2002.
Philip J. Padovano, Judge, First District Court of Appeal, Tallahassee, FL, Chair, Committee on Minimum Standards for Attorneys in Capital Cases; Oscar H. Eaton, Jr., Chair, The Florida Bar Criminal Procedure Rules Committee, Sanford, FL, and John F. Harkness, Jr., Executive Director, The Florida Bar, Tallahassee, FL; Robert Trammell, General Counsel, Florida Public Defender Association, Inc., Tallahassee, FL; and James T. Miller, Jacksonville, FL, Chair, Amicus Curiae Committee, Florida Association of Criminal Defense Lawyers, on behalf of David Rothman, President, FACDL, for Petitioner.
Nancy A. Daniels, Public Defender, and Chet Kaufman and W.C. McLain, Assistant Public Defenders, Second Judicial Circuit, Tallahassee, FL, William P. White, Chief Assistant Public Defender and Alan Chipperfield, Assistant Public Defender, Fourth Judicial Circuit, Jacksonville, FL, and James Slater, Chief Assistant Public Defender, Twelfth Judicial Circuit, Bradenton, FL, attorneys for The Florida Public Defender Association, Inc.; Robert Fraser, Brandon, FL; William D. Matthewman of Seiden, Alder, Rothman, Petosa & Matthewman, P.A., Boca Raton, FL; Christopher J. Anderson, Capital Collateral Registry Counsel, Jacksonville, FL; Lawrence J. Fox, Chair, Elisabeth Semel, Director, and Judy A. Gallant, Staff Attorney, American Bar Association, Washington, D.C.; Gregory C. Smith, Office of the Capital Collateral Counsel Northern Region of Florida, Tallahassee, FL, John W. Moser, CCRC, Middle Region, Tampa, FL, Michael P. Reiter, Chief Assistant, CCRC, Middle Region, Tampa, FL, and Neal A. Dupree, CCRC, Southern Region, Fort Lauderdale, FL, Responding.
ANSTEAD, J.
At the Court's request, the Committee on Minimum Standards for Attorneys in Capital Cases (Minimum Standards Committee or Committee) has filed proposed amendments to Florida Rule of Criminal Procedure 3.112 (Minimum Standards for Attorneys in Capital Cases). We have jurisdiction. See art. V, § 2(a), Fla. Const. By this opinion we accept most of the Committee's proposals in our continuing efforts to improve the capital litigation process in Florida.

BACKGROUND
This Court, in 1997, established the Committee on Minimum Standards for Attorneys in Capital Cases to study and recommend for the Court's review minimum standards to ensure the competency of court-appointed counsel in death penalty cases. See In re Proposed Amendment to Fla. Rules of Judicial Admin., 22 Fla. L. Weekly S407 (Fla. July 3, 1997). The Committee proposed such standards, the standards were published in The Florida Bar News, and a number of comments were filed and forwarded to the Committee. Based on the comments, the Committee submitted revised proposed standards and oral argument was held on the proposals.
In 1998, the Court deferred consideration of the proposed standards pending legislative study of the issue. See In re Amendment to Fla. Rules of Judicial Admin.Minimum Standards for Appointed *186 Counsel in Capital Cases, 711 So.2d 1148 (Fla.1998). After unanimous recommendation by a legislative study commission that this Court, rather than the Legislature, adopt standards for lawyers in capital cases, the Court resumed consideration of the matter. See In re Amendment to Fla. Rules of Criminal ProcedureRule 3.112 Minimum Standards for Attorneys in Capital Cases, 759 So.2d 610, 611 (Fla.1999). In 1999, this Court adopted the Committee's proposed revised standards, with some modification, as rule of criminal procedure 3.112, which went into effect July 1, 2000. See id.
As adopted, new rule 3.112 applies to "conflict" counsel-attorneys appointed to represent defendants in capital cases where the services of the public defender are not available due to a conflict of interest. See Fla. R.Crim. P. 3.112(a). When adopting the new rule, the Court announced its "preliminary" determination that the minimum standards "should be extended to lawyers practicing law within the offices of the public defenders in order to ensure that competent counsel is provided to all indigent capital defendants." 759 So.2d at 614. However, recognizing that it had not previously announced its intention to extend the rule to assistant public defenders, the Court sought comments on extending the rule. The Court also noted agreement with the views expressed by Justice Lewis in his specially concurring opinion that "we have an obligation to investigate and consider establishing standards for all counsel, including public defenders, privately retained counsel, and others who represent capital defendants during any phase of the proceedings." 759 So.2d at 614 n. 9. The Court, therefore, asked the Minimum Standards Committee "to reconvene, and after appropriate investigation and study, to make recommendations to this Court as to whether we should adopt additional standards as suggested by Justice Lewis." Id.
In response to the Court's request, the Committee submitted two sets of proposed amendments: the first proposal extends rule 3.112 to all attorneys who handle capital cases; the second proposal amends the rule to cover all attorneys except privately retained counsel. The Court in turn published the two proposals for comment in the June 15, 2000, edition of The Florida Bar News. A number of comments were filed and oral argument was held in December 2000. At oral argument, much of the discussion focused on whether and how to extend the standards to privately retained counsel. In response to this Court's request, the Florida Association of Criminal Defense Lawyers (FACDL) subsequently filed a supplemental comment addressing "the practical problems discussed at oral argument regarding extension of the subject standards to privately-retained counsel."

DISCUSSION
With this long history and wealth of input at hand, we adhere to our initial decision to extend the rule 3.112 minimum standards to public defenders who represent defendants in capital cases and further extend the standards to private counsel retained to represent capital defendants at trial or on direct appeal. However, for the reasons expressed below, we decline to extend the standards to capital postconviction counsel. When originally adopting rule 3.112, we took "an important step in ensuring the integrity of the judicial process in capital cases by adopting [minimum standards for conflict attorneys appointed in capital cases] to help ensure that competent representation will be provided to indigent capital defendants in all cases." 759 So.2d at 611. Today, with the adoption of these *187 amendments, we broaden that goal by requiring all attorneys who represent capital defendants at trial or on direct appeal to meet the minimum standards of the rule. Accordingly, we adopt the Minimum Standards Committee's first proposal, with the modifications discussed below. We also address below, by general topic, a number of suggestions and concerns raised by the comments or at oral argument.

REACH OF STANDARDS
As noted above, rule 3.112 currently applies only to conflict counsel who handle capital trials and appeals. When adopting the rule 3.112 standards, the Court announced its intent to extend the standards to attorneys within the offices of the public defenders who handle capital cases and sought input on that decision. 759 So.2d at 614. The majority of those who commented, including The Florida Public Defender Association (Association), supports this extension; and we believe that adopting minimum standards for public defenders who handle capital cases is a logical extension of rule 3.112 which will ensure that all indigent defendants facing a death sentence receive competent representation.
Further extending the standards to privately retained counsel is overwhelmingly supported by virtually all who addressed the issue in comments and at oral argument, including the Florida Association of Criminal Defense Lawyers (FACDL), which represents private lawyers throughout Florida. The sole opponent to this extension is the Criminal Procedure Rules Committee (Rules Committee), which is concerned that requiring private attorneys to comply with rule 3.112 before they can represent a capital defendant could limit the constitutional right of an accused, facing the death penalty, to retain counsel of his or her choice. Those who favor extending the standards to privately retained counsel counter this concern by citing such cases as Wheat v. United States, 486 U.S. 153, 159, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988) (recognizing that "while the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers"); and Vagner v. Wainwright, 398 So.2d 448, 452 (Fla.1981) (stating that the same standards for evaluating claims of inadequacy and incompetency of appointed counsel apply to such claims involving retained counsel). The proponents of the extension further argue that this Court's inherent authority to set standards for Bar admission and practice and to mandate qualifications for certification in specified practice areas, see art. V, § 15, Fla. Const., would extend to the adoption of minimum standards for private attorneys who wish to handle capital cases.
We are sensitive to the Rules Committee's concern; however, we believe that the uniform application of these standards to all attorneys who handle capital trials and direct appeals should have little impact on a nonindigent defendant's right to choose counsel. According to the supplemental comment filed by the FACDL, retaining private counsel in a capital case is relatively rare and most of the private attorneys who handle capital cases already meet the minimum standards. The FACDL further notes that, for those who do not meet the standards, there should be no significant obstacles to their obtaining the necessary training and experience. The required continuing legal education programs are readily available and mentoring programs exist throughout the state which permit private counsel to sit as "second *188 chair" in capital cases with court-appointed counsel or public defenders.
Moreover, one of our goals in adopting these standards is to minimize postconviction problems and delay at the back end of the process by focusing on the quality of the trial and direct appeal proceedings at the front end. If we do not do as other states with similar standards[1] have done and apply the standards to retained counsel, we could leave an unnecessary gap in our quality-control efforts. As noted by Justice Lewis, "[t]hese standards are essential prerequisites if we are to ensure a fundamentally fair adversarial process in this most serious class of criminal cases." 759 So.2d at 615 (Lewis, J., specially concurring). We agree that this "net of protection" must be extended to all attorneys who represent capital defendants at trial or on appeal "if our underlying purpose is truly to ensure that competent representation is provided to capital defendants in all cases." Id.
There also is general support for the concept of adopting minimum standards for capital postconviction counsel. However, there are several aspects of the Minimum Standards Committee's proposal which raise concerns that lead us to conclude that the standards should not be extended to collateral counsel at this time. For example, the Capital Collateral Regional Counsels (CCRCs) point out that the proposals, as written, do not take into consideration the fact that many attorneys who seek employment with the offices of CCRCs came to those offices from law school and gain expertise in handling these highly specialized postconviction proceedings by working with more experienced attorneys in those offices.[2] Thus, the proposed standards could discourage new graduates from applying for these hard-to-fill positions and could result in qualified collateral counsel being disqualified from lead counsel positions, further burdening these already taxed offices.
We also are persuaded by the Minimum Standards Committee's initial determination not to include minimum standards for postconviction counsel in its prior recommendations because the right to capital postconviction counsel is a statutory right,[3] and the Legislature has provided explicit standards for assistant collateral capital counsel and for conflict counsel appointed in capital postconviction proceedings, see section 27.704, Fla. Stat. (2000),[4] as well as *189 providing for judicial oversight and monitoring of assigned counsel's performance in postconviction proceedings. See § 27.711(12), Fla. Stat. (2000). Moreover, while we are concerned with the competency of collateral counsel, our primary concern in adopting rule 3.112 was to ensure that indigent capital defendants receive competent trial and appellate representation. If errors and claims of ineffective assistance at the trial and appellate levels are avoided by ensuring qualified legal representation at those "first-tier" proceedings, the workload of collateral counsel at the "second-tier" postconviction proceedings should be reduced.

PUBLIC DEFENDERREFUSAL OF APPOINTMENT
The Florida Public Defender Association originally proposed to the Minimum Standards Committee a subdivision providing that "[t]he Public Defender may refuse appointment on new capital cases when his/her caseload is excessive for the number of qualified attorneys working in the office. The annual caseload for an assistant public defender should not exceed three capital cases." The Committee declined to include this language in its proposals, explaining that "it would deprive the trial court of control over the assignment of counsel," and that excessive caseload issues can be addressed by the court under proposed subdivision (j), Limitation on Caseloads. The Association now "strongly urges this Court to include within this rule a provision authorizing the public defender to refuse an appointment in a capital case due to overload," asserting that
[i]t is the constitutional duty and responsibility of each Public Defender to decide, in the first instance, whether an Assistant Public Defender is qualified to handle a particular case or caseload; and then, in the second instance, to decide whether the qualified Assistant Public Defender has an excessive caseload, thereby diminishing the likelihood of effective representation. No appointing court appoints a specific Assistant Public Defender. The Public Defender is appointed in every criminal case. See § 27.52(1)(d), Fla. Stat. (1999) ("If the court finds that the accused person ... [is] indigent ... the court shall appoint the public defender ...") (emphasis supplied). Moreover, Public Defenders, as all lawyers, are ethically obligated not to represent clients when excessive caseloads impair representation. See generally Florida Rules of Professional Conduct.
The Association additionally notes that "implementation of the minimum standards may have a fiscal impact on the [Public Defender Offices'] already strained resources ... [which] will be required to recruit, train, and retain qualified counsel."
*190 While acknowledging that the Association's concerns are well taken, the Committee suggests that excessive caseload issues, such as this, can be adequately addressed by the court under proposed sub-division (j), Limitation on Caseloads, which provides, in pertinent part:
As soon as practicable, the trial court should conduct an inquiry relating to counsel's availability to provide effective assistance of counsel to the defendant. In assessing the availability of prospective counsel, the court should consider the number of capital or other cases then being handled by the attorney and any other circumstances bearing on the attorney's readiness to provide effective assistance of counsel to the defendant in a timely fashion. No appointment should be made to an attorney who may be unable to provide effective legal representation as a result of an unrealistically high caseload.
While we generally agree with the Committee's response, we are adding the following paragraph to subdivision (j) to specifically focus on caseload issues within the Public Defenders' offices:
If a Public Defender seeks to refuse appointment to a new capital case based on a claim of excessive caseload, the matter should be referred to the Chief Judge of the circuit or to the administrative judge as so designated by the Chief Judge. The Chief Judge or his or her designate should coordinate with the Public Defender to assess the number of attorneys involved in capital cases, evaluate the availability of prospective attorneys, and resolve any representation issues.

APPOINTMENT OF COCOUNSEL
At the suggestion of the Florida Public Defender Association, the Committee added the last sentence of subdivision (e), Appointment of Counsel, which provides, "In capital cases in which the Public Defender is appointed, the Public Defender shall designate lead and cocounsel." The Association, as well as others who commented, advocates that the appointment of cocounsel should be mandatory in all capital cases, noting that "[t]he [American Bar Association] has long taken the position that at least two qualified attorneys must be assigned to each of the three stages of a capital case" and asks us to reconsider our prior qualification of this requirement. The American Bar Association joins in this request. However, as we explained in our earlier opinion:
Although we are in agreement with the committee's legitimate concerns in recommending [the appointment of two attorneys] to ensure adequate and competent representation for capital defendants, we also agree with the views expressed by others that the trial court should retain some supervisory authority over the decision to appoint cocounsel. Therefore, while the standards we adopt today provide that two lawyers should ordinarily be appointed, we leave the ultimate decision to the discretion of the trial court.
759 So.2d at 612-13 (footnote omitted). We are confident that trial judges will act in accord with the overarching purpose of the rule, which is to see that adequate and competent representation is provided to all capital defendants.

PRIOR EXPERIENCE
In response to the comments filed, we have changed proposed subdivisions (f)(3) and (g)(2)(B) to make clear that the prior experience required for lead counsel and cocounsel under those subdivisions can be obtained in either state or federal court.

*191 CLE REQUIREMENTS

Proposed subdivisions (f)(7), lead counsel, (g)(2)(E), cocounsel, and (h)(6), appellate counsel, require that counsel attend at least ten hours of continuing legal education devoted to the defense of capital cases each year. Several of those who commented urge us to provide busy litigators with more flexibility in meeting these CLE requirements. We are persuaded by this argument and believe that increasing the number of hours of continuing legal education required from ten hours to twelve hours and extending the time allotted to obtain the credits from one to two years will provide capital attorneys with more flexibility and better opportunities to attend meaningful training programs. Cf. Ill. Sup.Ct. R. 714(b)(4)(i) (requiring at least twelve hours of training in preparation and trial of capital cases within two years). Moreover, in order to ensure that qualified counsel will be available at the time these amendments go into effect, we have added language providing that attorneys not meeting the continuing legal education requirements when the amendments take effect will have until March 1, 2003, or approximately one year from the date of this opinion, in which to satisfy the requirements. We have amended subdivisions (f)(7), (g)(2)(E) and (h)(6) accordingly.

NOTICE TO CLIENT
Attorney William D. Matthewman suggests that the rule mandate service of the Notice of Appearance[5] on the accused so that the accused is made aware at the outset whether the attorney is qualified to handle the capital case. We agree that "it is the client who has the greatest stake in the outcome of a capital case, and service of the Notice upon the client will allow the client to address any concerns regarding counsel's qualifications at the outset." Accordingly, we have added language to subdivision (i) which requires that the appointed attorney serve the capital defendant with a copy of the notice of appearance.

EXCEPTIONAL CIRCUMSTANCES
Subdivision (k), Exceptional Circumstances, of the proposed rule provides as follows:
In the event that the trial court determines that exceptional circumstances require appointment of counsel not meeting the requirements of this rule, the trial court shall enter an order specifying, in writing, the exceptional circumstances requiring deviation from the rule and the court's explicit determination that counsel chosen will provide competent representation in accord with the policy concerns of the rule.
The Florida Public Defender Association "believes this Court should continue to leave some leeway in the rule to appoint lawyers who do not precisely meet the qualification standards, but only in exceptional circumstances," recognizing that "[t]his would help Public Defenders who presently do not have full complements of qualified counsel, and it will help train lawyers to take on the responsibilities of qualified lead and cocounsel in future cases." However, the Association is "gravely concerned that the breadth of the [proposed] exception may swallow the rule *192 itself, authorizing appointing courts to exercise unbridled discretion to appoint unqualified lawyers," urging that
[d]ecisions to assign or appoint qualified counsel are among the most critical decisions in any capital case. Everything that occurs in the death penalty process necessarily flows from the adequacy of the initial choice of counsel. As this Court knows well, the lives of capital defendants often depend on that initial appointment. Furthermore, the discretion a court uses to determine whether counsel meets the "exception" to the qualification standards may be largely unreviewable, at least under the present rule. Thus, whatever decision is made as to approving a lawyer who does not meet the standards must be made properly, carefully, and within the most narrowly tailored limitations.
We share the Association's concerns and reiterate that "trial judges responsible for the appointment of counsel in cases where the very life of the defendant is at risk must take care to appoint well-qualified lawyers." 759 So.2d at 613. If the minimum standards we adopt today are to guide trial judges in carrying out this charge, the appointment of attorneys who do not meet the requirements of the rule must be the rare exception and done only when the "trial court has complete and unqualified confidence as to the quality of representation" that the appointed attorneys will provide. 759 So.2d at 613. We trust that trial courts will heed our counsel and make appointments in capital cases with the diligence necessary to ensure the integrity of the process so as to minimize later claims of incompetency.

CLIENT WAIVER
We decline to adopt a "client waiver" provision that would allow a capital defendant to waive any of the requirements of rule 3.112. As pointed out by the FACDL, a capital defendant rarely retains private counsel and most private attorneys who would undertake such representation already meet the rule 3.112 standards. Further, if exceptional circumstances require representation by private counsel not meeting the requirements of the rule, the court may allow the representation in accordance with subdivision (k). As to conflict counsel or the public defenders, we can see no valid reason to allow an indigent defendant to waive the requirements of the rule as they apply to these court-appointed attorneys. An indigent defendant does not have a right to insist on representation by an attorney appointed by the court at taxpayer expense. Cf. Wheat, 486 U.S. at 159, 108 S.Ct. 1692 (recognizing that "a defendant may not insist on representation by an attorney he cannot afford"). Moreover, there is legitimate concern that allowing a capital defendant to waive the requirements of the rule would undercut the rule's purpose of ensuring that competent representation will be provided to capital defendants in all cases and could result in later claims of ineffective assistance of counsel.

GRANDFATHER CLAUSE
We also decline to adopt a "grandfather clause" that would allow attorneys who do not meet the new standards, but who previously have handled capital cases, to continue to represent capital defendants. As explained above, subdivision (k) of rule 3.112 allows for representation by counsel not meeting the requirements of the rule when the trial court determines exceptional circumstances warrant such appointment. As further explained above, in order not to render the standards meaningless, trial courts must use great care in determining whether an attorney who is not qualified under the new rule should be allowed to represent a *193 capital defendant. We fear that adding a blanket "grandfather clause" exception to the rule would totally undercut the new standards. Moreover, according to the written and oral comments, there are numerous CLE and case experience opportunities available for all attorneys who wish to represent defendants facing the death penalty. As noted above, attorneys who do not meet the continuing legal education requirements will have until March 1, 2003, in which to satisfy the requirements.

COMMITTEE COMMENT
The committee comment following the proposed rule provides in pertinent part:
These standards are not intended to establish any independent legal rights. For example, the failure to appoint cocounsel, standing alone, has not been recognized as a ground for relief from a conviction or sentence. See Ferrell v. State, 653 So.2d 367 (Fla.1995); Lowe v. State, 650 So.2d 969 (Fla.1994); Armstrong v. State, 642 So.2d 730 (Fla.1994). Rather, these cases stand for the proposition that a showing of inadequacy of representation in the particular case is required. See Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). These rulings are not affected by the adoption of these standards. Any claims of ineffective assistance of counsel will be controlled by Strickland.

The Florida Public Defender Association expresses concern about this language, urging that "[f]irst, it is not appropriate for the Court in a rule to determine whether or not separate causes of action may arise from the rule in a particular case yet to be litigated," and that "[s]econd, the Association is concerned that language in the comment may be interpreted by some to undermine the requirement that there be qualified, effective counsel at every stage of a capital case, thereby undermining the significance of rule 3.112 itself." The comment is that of the Committee. It is included in the rule for explanation and guidance only and is not adopted by this Court as an official part of the rules. The concerns raised by the Association are more appropriately addressed in a true case and controversy.

CONCLUSION
This Court recognizes its continuing obligation to ensure the integrity of the judicial process in all cases, but has been particularly vigilant to develop procedures designed to ensure the integrity of capital proceedings where the accused faces the ultimate penalty. In this regard, the Court has taken a number of measured steps in the last several years to improve the quality, fairness, and efficiency of capital proceedings. For example, in 1997 the Court adopted Florida Rule of Judicial Administration 2.050(b)(10), requiring mandatory training for trial judges who handle capital cases. See In re Amendment to Fla. Rules of Judicial Admin., Rule 2.050(b)(10). 688 So.2d 320 (Fla.1997). More recently, in order to eliminate unnecessary delays in capital postconviction proceedings and ensure the quality and fairness of those proceedings, we amended rule 3.851, Collateral Relief After Death Sentence Has Been Imposed and Affirmed on Direct Appeal. Amendments to Fla. Rules of Criminal Procedure 3.851, 3.852 & 3.993 & Fla. Rule of Judicial Admin. 2.050, 802 So.2d 298 (Fla.2001). In connection with the rule 3.851 amendments, we adopted Florida Rule of Judicial Administration 2.070(i), requiring the chief judge of each circuit to enter an administrative order developing and implementing a circuit-wide plan to expedite the preparation of transcripts in all capital trials and capital postconviction proceedings. *194 Amendments to Fla. Rules of Criminal Procedure 3.851, 3.852 & 3.993, 772 So.2d 532, 534-35 (Fla.2000). In this case, by adopting minimum standards that apply to all attorneys who represent defendants in trial and appellate-level capital proceedings, we hope to further improve our capital punishment system by ensuring adequate representation in these all-important "first-level" proceedings, thereby decreasing the number of claims of ineffective assistance in postconviction proceedings. However, this Court is under no illusions that the mere act of enacting stronger rules alone will bring about the desired improvement and hence increased confidence in capital litigation. In truth, it will be up to the good faith and professionalism of Florida's judges, prosecutors, defense lawyers, and all others who support the capital litigation process, to give real meaning to these efforts in Florida's courtrooms. We are confident that they are up to the task.
The Court greatly appreciates the Minimum Standards Committee's assistance in developing these standards and asks the Committee to continue to monitor the effectiveness of the standards and to evaluate ways to further improve rule 3.112. We specifically would like the Committee to consider the Florida Public Defender Association's suggestion concerning prescreening by conflict committees, and Registry Counsel Christopher J. Anderson's suggestion that a subdivision be added to allow for the substitution of judicial law clerk or staff attorney experience for one or more of the requirements of the standards. We ask the Committee to continue to consider these suggestions, as well as any other issues raised in these proceedings that it determines merit further consideration, and report back to the Court with any proposed amendments by July 31, 2003.
Accordingly, we amend rule 3.112 as indicated in the appendix to this opinion. New language is indicated by underlining and deletions are indicated by struck-through type. The amendments shall become effective at 12:01 a.m., July 1, 2002, and shall apply only to attorneys appointed or retained on or after that date.
It is so ordered.
WELLS, C.J., and SHAW, PARIENTE, LEWIS, and QUINCE, JJ., concur.
HARDING, J., concurs in part and dissents in part with an opinion.
HARDING, J., concurring in part and dissenting in part.
I concur with all of the majority's changes to Florida Rule of Criminal Procedure 3.112 except the application of the rule to privately retained counsel. While it is a worthy goal to seek that all counsel representing capital defendants be qualified by education and experience, I find it troubling that this Court can deprive a defendant of the right to retain counsel of his or her choice.

APPENDIX

Rule 3.112 Minimum Standards for Attorneys in Capital Cases
(a) Statement of Purpose. The purpose of these rules is to set minimum standards for conflict attorneys in capital cases to help ensure that competent representation will be provided to indigent capital defendants in all cases. Minimum standards that have been promulgated concerning representation for defendants in criminal cases generally and the level of adherence to such standards required for noncapital cases should not be adopted as sufficient for death penalty cases. Counsel in death penalty cases should be required to perform at the level of an attorney *195 reasonably skilled in the specialized practice of capital representation, zealously committed to the capital case, who has had adequate time and resources for preparation. These minimum standards for capital cases are not intended to preclude any circuit from adopting or maintaining standards having greater requirements.
(b) Definitions. A capital trial case is defined as any first-degree murder case in which the State has not formally waived the death penalty on the record. A capital appeal case is any appeal in which the death penalty has been imposed. A capital postconviction case proceeding is any case postconviction proceeding where the defendant is still under a sentence of death.
(c) Applicability. This rule applies to all lawyers handling capital trials and capital appeals, who are appointed or retained on or after July 1, 2002. Subject to more specific provisions in the rule, the standards established by the rule apply to Public Defenders and their assistants.
(c)(d) List of Qualified Conflict Counsel.
(1) Every circuit shall maintain a list of conflict counsel qualified for appointment in capital cases in each of three categories:
(A) lead trial counsel;
(B) trial cocounsel; and
(C) appellate counsel.
No attorney may be appointed to handle a capital trial or appeal unless duly qualified on the appropriate list.
(2) The conflict committee for each circuit is responsible for approving and removing attorneys from the list pursuant to section 925.037, Florida Statutes. Each circuit committee is encouraged to obtain additional input from experienced capital defense counsel.
(3) No attorney may be qualified on any of the capital lists unless he or she has attended within the last year a continuing legal education program of at least ten hours' duration devoted specifically to the defense of capital cases. Continuing legal education programs meeting the requirements of this rule shall be offered by the Florida Bar or another recognized provider and should be approved for continuing legal education credit by the Florida Bar. The failure to comply with this requirement shall be cause for removal from the list until the requirement is fulfilled.
(d)(e) Appointment of Counsel. A court must appoint lead counsel and, upon written application and a showing of need by lead counsel, should appoint cocounsel to handle every capital trial in which the defendant is not represented by retained counsel or the Public Defender. Lead counsel shall have the right to select cocounsel from attorneys on the lead counsel or cocounsel list. Both attorneys shall be reasonably compensated for the trial and sentencing phase. Except under extraordinary circumstances, only one attorney may be compensated for other proceedings. In capital cases in which the Public Defender is appointed, the Public Defender shall designate lead and cocounsel.
(e)(f) Lead Counsel. Lead trial counsel assignments should be given to attorneys who:
(1) are members of the bar admitted to practice in the jurisdiction or admitted to practice pro hac vice; and
(2) are experienced and active trial practitioners with at least five years of litigation experience in the field of criminal law; and
(3) have prior experience as lead counsel in no fewer than nine state or federal jury trials of serious and complex cases which were tried to completion, *196 as well as prior experience as lead defense counsel or cocounsel in at least two state or federal cases tried to completion in which the death penalty was sought. In addition, of the nine jury trials which were tried to completion, the attorney should have been lead counsel in at least three cases in which the charge was murder; or alternatively, of the nine jury trials, at least one was a murder trial and an additional five were felony jury trials; and
(4) are familiar with the practice and procedure of the criminal courts of the jurisdiction; and
(5) are familiar with and experienced in the utilization of expert witnesses and evidence, including but not limited to psychiatric and forensic evidence; and
(6) have demonstrated the necessary proficiency and commitment which exemplify the quality of representation appropriate to capital cases, including but not limited to the investigation and presentation of evidence in mitigation of the death penalty.; and
(7) have attended within the last two years a continuing legal education program of at least twelve hours' duration devoted specifically to the defense of capital cases. Attorneys who do not meet the continuing legal education requirement on July 1, 2002, shall have until March 1, 2003, in which to satisfy the continuing legal education requirement.
(f)(g) Cocounsel. Trial cocounsel assignments should be given to attorneys who:
(1) are members of the bar admitted to practice in the jurisdiction or admitted to practice pro hac vice; and
(2) Who qualify as lead counsel under paragraph (e)(f) of these standards or meet the following requirements:
(A) are experienced and active trial practitioners with at least three years of litigation experience in the field of criminal law; and
(B) have prior experience as lead counsel or cocounsel in no fewer than three state or federal jury trials of serious and complex cases which were tried to completion, at least two of which were trials in which the charge was murder; or alternatively, of the three jury trials, at least one was a murder trial and one was a felony jury trial; and
(C) are familiar with the practice and procedure of the criminal courts of the jurisdiction; and
(D) have demonstrated the necessary proficiency and commitment which exemplify the quality of representation appropriate to capital cases, and
(E) have attended within the last two years a continuing legal education program of at least twelve hours' duration devoted specifically to the defense of capital cases. Attorneys who do not meet the continuing legal education requirement on July 1, 2002, shall have until March 1, 2003, in which to satisfy the requirement.
(g)(h) Appellate Counsel. Appellate counsel assignments should be given to attorneys who:
(1) are members of the bar admitted to practice in the jurisdiction or admitted to practice pro hac vice; and
(2) are experienced and active trial or appellate practitioners with at least five years of experience in the field of criminal law; and
(3) have prior experience in the appeal of at least one case where a sentence of death was imposed, as well as prior experience as lead counsel in the appeal of no fewer than three felony *197 convictions in federal or state court, at least one of which was an appeal of a murder conviction; or alternatively, have prior experience as lead counsel in the appeal of no fewer than six felony convictions in federal or state court, at least two of which were appeals of a murder conviction; and
(4) are familiar with the practice and procedure of the appellate courts of the jurisdiction; and
(5) have demonstrated the necessary proficiency and commitment which exemplify the quality of representation appropriate to capital cases.; and
(6) have attended within the last two years a continuing legal education program of at least twelve hours' duration devoted specifically to the defense of capital cases. Attorneys who do not meet the continuing legal education requirement on July 1, 2002, shall have until March 1, 2003, in which to satisfy the requirement.
(i) Notice of Appearance. An attorney who is retained or appointed in place of the Public Defender to represent a defendant in a capital case shall immediately file a notice of appearance certifying that he or she meets the qualifications of this rule. If the office of the Public Defender is appointed to represent the defendant, the public defender shall certify that the assistants assigned as lead and cocounsel meet the requirements of this rule. A notice of appearance filed under this rule shall be served on the defendant.
(j) Limitation on Caseloads.
(1) Generally. As soon as practicable, the trial court should conduct an inquiry relating to counsel's availability to provide effective assistance of counsel to the defendant. In assessing the availability of prospective counsel, the court should consider the number of capital or other cases then being handled by the attorney and any other circumstances bearing on the attorney's readiness to provide effective assistance of counsel to the defendant in a timely fashion. No appointment should be made to an attorney who may be unable to provide effective legal representation as a result of an unrealistically high caseload. Likewise, a private attorney should not undertake the representation of a defendant in a capital case if the attorney's caseload is high enough that it might impair the quality of legal representation provided to the defendant.
(2) Public Defender. If a Public Defender seeks to refuse appointment to a new capital case based on a claim of excessive caseload, the matter should be referred to the Chief Judge of the circuit or to the administrative judge as so designated by the Chief Judge. The Chief Judge or his or her designate should coordinate with the Public Defender to assess the number of attorneys involved in capital cases, evaluate the availability of prospective attorneys, and resolve any representation issues.
(h)(k) Exceptional Circumstances. In the event that the trial court determines that counsel meeting the technical requirements of this rule is not available and that exceptional circumstances require appointment of other counsel not meeting the requirements of this rule, the trial court shall enter an order specifying, in writing, the exceptional circumstances requiring deviation from the rule and the court's explicit determination that counsel chosen will provide competent representation in accord with the policy concerns of the rule.
Committee Comments
Introductory Statement. These standards are based on the general premise that the defense of a capital case requires specialized skill and expertise. The Supreme Court has not only the *198 authority, but the constitutional responsibility to ensure that indigent defendants are provided with competent counsel, especially in capital cases where the State seeks to take the life of the indigent defendant. The Supreme Court also has exclusive jurisdiction under Article V section 15 of the Florida Constitution to "[r]egulate the admission of persons to the practice of law and the discipline of persons admitted." Implied in this grant of authority is the power to set the minimum requirements for the admission to practice law, see In re Florida Board of Bar Examiners, 353 So.2d 98 (Fla.1977), as well as the minimum requirements for certain kinds of specialized legal work. The Supreme Court has adopted minimum educational and experience requirements for board certification in other specialized fields of the law.
The experience and continuing educational requirements in these standards are based on existing local standards in effect throughout the state as well as comparable standards in effect in other states. Specifically, the committee considered the standards for the appointment of counsel in capital cases in the Second, Sixth, Eleventh, Fifteenth, and Seventeenth Circuits, the statewide standards for appointing counsel in capital cases in California, Indiana, Louisiana, Ohio, and New York, and the American Bar Association standards for appointment of counsel in capital cases.
These standards are intended to apply only in those cases in which the court is appointing a lawyer in place of the public defender. Nothing expressed herein should be interpreted as an infringement of the defendant's right to select retained counsel.
Furthermore, tThese standards are not intended to establish any independent legal rights. For example, the failure to appoint cocounsel, standing alone, has not been recognized as a ground for relief from a conviction or sentence. See Ferrell v. State, 653 So.2d 367 (Fla. 1995); Lowe v. State, 650 So.2d 969 (Fla. 1994); Armstrong v. State, 642 So.2d 730 (Fla.1994). Rather, these cases stand for the proposition that a showing of inadequacy of representation in the particular case is required. See Strickland v. Washington, 466 U.S. 668[, 104 S.Ct. 2052, 80 L.Ed.2d 674] (1984). These rulings are not affected by the adoption of these standards. Any claims of ineffective assistance of counsel will be controlled by Strickland.

(d) Appointment of Counsel. At the time of appointment of qualified counsel, the trial court should conduct an inquiry relating to counsel's availability to provide effective assistance of counsel to the defendant. In assessing the availability of prospective counsel, the court should consider the number of capital or other cases then being handled by the attorney and any other circumstances bearing on the attorney's readiness to provide effective assistance of counsel to the defendant in a timely fashion.
The American Bar Association Standards and many other state standards require the appointment of two lawyers at the trial level in every prosecution that could result in the imposition of the death penalty. The committee has modified this requirement by allowing the trial court some discretion as to the number of attorneys, and by eliminating certain provisions that may be unnecessary or economically unfeasible. Paragraph (d)(e) minimizes the potential duplication of expenses by limiting the compensable participation of counsel. In addition, the standard adopted herein requires an initial showing by lead counsel *199 of the need for cocounsel and, while the standard suggests that cocounsel should ordinarily be appointed, the ultimate decision is left to the discretion of the trial court.
The committee emphasizes that the right to appointed counsel is not enlarged by the application of these standards. The court should appoint conflict counsel only if there is a conflict and the defendant otherwise qualifies for representation by the Public Defender. A defendant who is represented by retained counsel is not entitled to the appointment of a second lawyer at public expense merely because that defendant is unable to bear the cost of retaining two lawyers. As previously noted, these standards apply only to those cases in which the defendant is indigent and unrepresented and not to a case in which the defendant has retained private counsel.
NOTES
[1] See, e.g., Ill. Sup.Ct. R. 714 (requiring all attorneys who handle capital cases to meet qualifications of the Capital Litigation Trial Bar).
[2] Section 27.704, Florida Statutes (2000), specifically allows law school graduates who are not qualified to serve as "full-time assistant capital collateral counsel" to serve on the CCRCs legal staff but not serve as the sole counsel on a case.
[3] See § 27.7001, Fla. Stat. (2000) (stating intent of Legislature to provide for the collateral representation of any person convicted and sentenced to death).
[4] Section 27.704, Florida Statutes (2000), provides:

Appointment of assistants and other staff. Each capital collateral regional counsel may:
(1) Appoint, employ, and establish, in such numbers as he or she determines, full-time or part-time assistant counsel, investigators, and other clerical and support personnel who shall be paid from funds appropriated for that purpose. A full-time assistant capital collateral counsel must be a member in good standing of The Florida Bar, with not less than 3 years' experience in the practice of criminal law, and, prior to employment, must have participated in at least five felony jury trials, five felony appeals, or five capital postconviction evidentiary hearings or any combination of at least five of such proceedings. Law school graduates who do not have the qualifications of a full-time assistant capital collateral counsel may be employed as members of the legal staff but may not be designated as sole counsel for any person.
(2) Contract with private counsel who are members in good standing of The Florida Bar or with public defenders for the purpose of providing prompt and cost-effective representation for individuals who are sentenced to death in this state. A private counsel or public defender under contract with the regional counsel must have at least 3 years' experience in the practice of criminal law, and, prior to the contract, must have participated in at least five felony jury trials, five felony appeals, or five capital postconviction evidentiary hearings or any combination of at least five of such proceedings.
(3) Appoint pro bono assistant counsel, who must be members in good standing of The Florida Bar, and who shall serve without compensation at the discretion of the capital collateral regional counsel.
[5] Subdivision (i), Notice of Appearance, of the proposed rule provides as follows:

An attorney who is appointed in place of the public defender to represent a defendant in a capital case shall immediately file a notice of appearance certifying that he or she meets the qualifications of this rule. If the office of the public defender is appointed to represent the defendant, the public defender shall certify that the assistants assigned as lead and cocounsel meet the requirements of this rule.