656 So.2d 432 (1995)
Curtis WINDOM, Appellant,
v.
STATE of Florida, Appellee.
No. 80830.
Supreme Court of Florida.
April 27, 1995.
Rehearing Denied June 29, 1995.
*434 James B. Gibson, Public Defender and Christopher S. Quarles, Asst. Public Defender, Daytona Beach, for appellant.
Robert A. Butterworth, Atty. Gen. and Margene A. Roper, Asst. Atty. Gen., Daytona Beach, for appellee.
PER CURIAM.
Curtis Windom appeals his convictions of three counts of first-degree murder and one count of attempted first-degree murder, and his sentences of death for each of the murder convictions with a consecutive term of twenty-two years' imprisonment for the attempted first-degree murder charge. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const.
*435 In her sentencing order, the trial judge set out the details of this tragic event, which occurred in the City of Winter Garden in west Orange County, Florida on February 7, 1992. Before the event was over, defendant, armed with a gun, had murdered three people and seriously wounded a fourth. The pertinent facts taken from the trial record and stated in the trial judge's order are as follows:
Jack Luckett testified that he had talked with the Defendant the morning of the shootings. In their discussion, the Defendant asked Jack if Johnnie Lee had won money at the dog track and Jack said, "Yes, $114." The Defendant said Johnnie Lee owed him $2,000. When the Defendant learned Johnnie had won money at the track, he said to Jack, "My nigger, you're gonna read about me." He further said that he was going to kill Johnnie Lee. That same day at 11:51 a.m. (per the sales slip and the sales clerk) the Defendant purchased a .38 caliber revolver and a box of fifty .38 caliber shells from Abner Yonce at Walmart in Ocoee. Mr. Yonce remembered the sale and recalled there was nothing unusual about the Defendant and that he was "calm as could be."
Within minutes of that purchase, the Defendant pulled up in his car next to where Johnnie Lee was standing talking to two females and Jack Luckett on the sidewalk. All three testified that the Defendant's car was close and the Defendant leaned across the passenger side of the vehicle and shot Johnnie Lee twice in the back. (Johnnie Lee's back was towards the Defendant and there was no evidence he even saw the Defendant.) ... After the victim fell to the ground, the Defendant got out of the car, stood over the victim and shot him twice more from the front at very close range... . The Defendant then ran towards the apartment where Valerie Davis, his girlfriend and mother of one of his children, lived. (The Defendant lived with Valerie Davis off and on.) She was on the phone, and her friend Cassandra Hall had just arrived at the apartment and was present when the Defendant shot Valerie once in the left chest area within seconds of arriving in the apartment and with no provocation... .
From the apartment, the Defendant went outside, encountered Kenneth Williams on the street, and shot him in the chest at very close range. Mr. Williams saw the gun but did not think the Defendant would shoot him. Right before he was shot, he turned slightly and deflected the bullet somewhat. Although he was in the hospital for about 30 days and the wound was serious, he did not die. He said the Defendant did not look normal  his eyes were "bugged out like he had clicked." ...
From there, the Defendant ended up behind Brown's Bar where three guys, including the Defendant's brother, were trying to take the weapon from him. By that time, Valerie's mother had learned that her daughter had been shot, so she had left work in her car and was driving down the street. The Defendant saw her stop at the stop sign, went over to the car where he said something to her and then fired at her, hitting her twice, and killing her.
Windom was charged and convicted of three counts of first-degree murder and one count of attempted first-degree murder. The jury unanimously recommended death, and the judge followed the recommendation, sentencing Windom to death for all three counts of first-degree murder. Windom was also sentenced to a consecutive term of twenty-two years' imprisonment for the attempted first-degree murder charge.
In support of each death sentence, the trial judge found two aggravating factors: (1) the defendant had been previously convicted of another capital offense or felony involving the use of threat or violence to the person;[1] and (2) the crime was cold, calculated, and premeditated.[2] The court also found a number of statutory and nonstatutory mitigating factors[3] but determined they were not of *436 sufficient weight to preclude the death penalty.
Windom appeals his convictions and sentences, raising thirteen claims. We find that only the following nine merit discussion:[4] (1) the prosecutor's discriminatory use of peremptory challenges denied Windom his right to an impartial jury; (2) the trial court erred in allowing the State to introduce irrelevant, prejudicial evidence of a nonstatutory aggravating factor; (3) the trial court erred in failing to conduct an adequate hearing concerning the competency of trial counsel; (4) the trial court erred in allowing the introduction of prejudicial photographs of the victims; (5) the trial court erred in denying defendant's attempt to call a witness; (6) the trial court erred in its instruction on cold, calculated, and premeditated; (7) the trial court erred in finding that the crimes were committed in a cold, calculated, and premeditated manner; (8) the trial court erred in finding the prior violent felony aggravating factor; and (9) the death penalty is disproportionate in this case.
First, we address Windom's contention that the State's discriminatory use of peremptory challenges to exclude minorities from the jury denied him an impartial jury. Defendant argues that he is entitled to a new trial based upon Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986); State v. Alen, 616 So.2d 452 (Fla. 1993); State v. Slappy, 522 So.2d 18 (Fla.), cert. denied, 487 U.S. 1219, 108 S.Ct. 2873, 101 L.Ed.2d 909 (1988); and State v. Neil, 457 So.2d 481 (Fla. 1984). We conclude that the record does not support defendant's assertion.
For the defendant's trial, the jury was selected after some individual and some collective voir dire. The parties examined juror questionnaires prior to questioning in order to determine which of the venire persons were to be questioned individually. During the questioning, the trial court granted and denied cause challenges from both sides. At the end of voir dire, each side exercised peremptory challenges.
The State exercised the first peremptory challenge which defense counsel questioned as a "race issue." The trial court, in accord with Neil, followed the procedure required pursuant to State v. Johans, 613 So.2d 1319 (Fla. 1993), and inquired as to the reason for the challenge. The State expressed a race-neutral reason to which the defendant did not object.
Defendant next exercised a peremptory challenge on a venireman who was African-American. The State questioned this challenge on the basis of Neil, noting that all the murder victims were African-American. Defense counsel then stated a race-neutral reason for the challenge to which the State had no further objection.
The State then exercised a challenge in respect to a prospective juror which initiated a debate between both sides' counsel and the court concerning the ethnicity of the particular juror. When the prosecutor announced his intent to challenge this person the following dialogue ensued:
[DEFENSE COUNSEL]: I'd like to question that choice, too, assuming she is black.
[PROSECUTOR]: I don't believe she is.
THE COURT: It says Hispanic.
[PROSECUTOR]: I think she is actually Indian.
With this uncertainty, the court and counsel agreed to inquire of the person further:

*437 THE COURT: Hi. What is your nationality?
[JUROR]: East Indian.
THE COURT: Okay. That's all we need to know. Thank you. She is definitely not a recognized minority. She's East Indian.
[DEFENSE COUNSEL]: Everybody in Trinidad is black.
[PROSECUTOR]: Not everybody because she is, obviously, not.
[DEFENSE COUNSEL]: She may be Indian.
THE COURT: All right. She's Indian but I'm going to let him strike her if that's what he wants to do.
The defendant relies on this peremptory strike in alleging that it was reversible error for the trial court not to require the State to have and express a race-neutral reason for the challenge.
Consistent with what we have held in Alen and Johans, and from our review of the voir dire record, we conclude, in respect to this prospective juror, that the defendant's expressed objection did not make it necessary for the trial court to require the State to have and express a race-neutral reason for the challenge. We reiterate once again what we stated specifically in Neil: there is an initial presumption that peremptories will be exercised in a nondiscriminatory manner. A party concerned about the other side's use of peremptory challenges must make a timely objection which demonstrates on the record that the challenged persons are members of a distinct racial group and that there is a strong likelihood that they have been challenged solely because of their race. We followed this statement in Johans by requiring a Neil inquiry when an objection is raised that a peremptory challenge is being used in a racially discriminatory manner. However, a timely objection and a demonstration on the record that the challenged person is a member of a distinct racial group have consistently been held to be necessary.
In Johans, the objection was timely and the factual demonstrations made. Johans, 613 So.2d at 1321. Moreover, we pointed out in Alen that because the question of one's membership in a cognizable class is a matter of fact, the trial judge is granted discretion in making this determination when an objection is made to a peremptory challenge. Alen, 616 So.2d at 456. Here, defense counsel did not make a timely objection in which it was demonstrated on the record that this venire person was a member of a cognizable class. We do not find that the trial court abused its discretion by sustaining the subject challenge, and thus reject defendant's first point on appeal.
Defendant claims that the trial court failed to conduct an adequate hearing regarding the competency of trial counsel. Defendant did not ask the trial court to discharge his counsel because of incompetence, and the record is unclear as to whether defendant in fact was dissatisfied with his counsel. We do not believe that any further inquiry by the trial court was necessary pursuant to Hardwick v. State, 521 So.2d 1071 (Fla. 1988), cert. denied, 488 U.S. 871, 109 S.Ct. 185, 102 L.Ed.2d 154 (1988).
A third issue raised by defendant is that the trial court denied his attempt to call a Sergeant Fusco as a witness. First, Sergeant Fusco was never called as a witness by the defense. When defendant announced an intent to call this witness the witness was not present, no attempt was made to locate him, and no testimony was proffered. There was no demonstration on the record that Fusco's testimony would be either relevant to any issue in the case or of probative value to the case. The trial court's ruling in respect to Sergeant Fusco was well within its discretion. Banda v. State, 536 So.2d 221 (Fla. 1988), cert. denied, 489 U.S. 1087, 109 S.Ct. 1548, 103 L.Ed.2d 852 (1989). In respect to the issue raised by the defendant pertaining to the admissibility of photographs of the victims, we likewise find that the trial court was within its discretion in admitting the photographs. Mordenti v. State, 630 So.2d 1080 (Fla.) (where photographs of victim were admissible in murder prosecution in conjunction with medical examiner's testimony to show location of lethal wounds and how they were inflicted), cert. denied, ___ U.S. ___, 114 S.Ct. 2726, 129 L.Ed.2d 849 (1994).
*438 Although Windom does not challenge the sufficiency of the evidence in this case, our review of the record indicates that Windom's convictions are supported by competent, substantial evidence. We therefore affirm the convictions and move on to consider Windom's penalty phase claims.
Windom attacks the admissibility of testimony by a police officer during the sentencing phase of the trial. The police officer was assigned by her police department to teach an anti-drug program in an elementary school in the community in which the defendant and the three victims of the murders lived, and where the murders occurred. Two of the sons of one of the victims were students in the program. The police officer testified concerning her observation about one of these sons following the murder. Her testimony involved a discussion concerning an essay which the child wrote. She quoted the essay from memory: "Some terrible things happened in my family this year because of drugs. If it hadn't been for DARE, I would have killed myself." The police officer also described the effect of the shootings on the other children in the elementary school. She testified that a lot of the children were afraid.
Defendant asserts, first, that this evidence was in essence nonstatutory aggravation, relying upon Grossman v. State, 525 So.2d 833 (Fla. 1988), cert. denied, 489 U.S. 1071, 109 S.Ct. 1354, 103 L.Ed.2d 822 (1989). Defendant does concede that subsequent to Payne v. Tennessee, 501 U.S. 808, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991), this Court has held victim impact testimony to be admissible as long as it comes within the parameters of the Payne decision. See Stein v. State, 632 So.2d 1361 (Fla.), cert. denied, ___ U.S. ___, 115 S.Ct. 111, 130 L.Ed.2d 58 (1994); Hodges v. State, 595 So.2d 929 (Fla.), vacated on other grounds, ___ U.S. ___, 113 S.Ct. 33, 121 L.Ed.2d 6 (1992). Both the Florida Constitution in Article I, Section 16, and the Florida Legislature in section 921.141(7), Florida Statutes (1993), instruct that in our state, victim impact evidence is to be heard in considering capital felony sentences. We do not believe that the procedure for addressing victim impact evidence, as set forth in the statute, impermissibly affects the weighing of the aggravators and mitigators which we approved in State v. Dixon, 283 So.2d 1 (Fla. 1973), cert. denied, 416 U.S. 943, 94 S.Ct. 1950, 40 L.Ed.2d 295 (1974), or otherwise interferes with the constitutional rights of the defendant. Therefore, we reject the argument which classifies victim impact evidence as a nonstatutory aggravator in an attempt to exclude it during the sentencing phase of a capital case.
Rather, we believe that section 921.141(7) indicates clearly that victim impact evidence is admitted only after there is present in the record evidence of one or more aggravating circumstances. The evidence is not admitted as an aggravator but, instead, as set forth in section 921.141(7), allows the jury to consider "the victim's uniqueness as an individual human being and the resultant loss to the community's members by the victim's death." § 921.141(7), Fla. Stat. (1993). Victim impact evidence must be limited to that which is relevant as specified in section 921.141(7). The testimony in which the police officer testified about the effect on children in the community other than the victim's two sons was erroneously admitted because it was not limited to the victim's uniqueness and the loss to the community's members by the victim's death.
However, defendant did not object to this testimony specifically, and thus his objection on appeal is procedurally barred. Hardwick v. Dugger, 648 So.2d 100 (Fla. 1994); Brown v. State, 596 So.2d 1026 (Fla. 1992); Engle v. Dugger, 576 So.2d 696 (Fla. 1991). Even if defendant's general objection to the police officer's testimony, made prior to her testimony before the jury, was found to reach this specific testimony, error in admitting it is harmless in this record. State v. DiGuilio, 491 So.2d 1129 (Fla. 1986). In this triple murder, the defendant made a knowing waiver of presenting any mitigating evidence to the advisory jury. The defendant did this in order to avoid any evidence being presented to the jury concerning the murders being related to the defendant trafficking in cocaine. The trial judge elicited a direct confirmation from the defendant that he understood that he was waiving his right *439 to present mitigating evidence and that the reason was so that the "drug thing" would not be heard by the jury. Thus, with the aggravating circumstances which were before the jury and with no mitigating evidence presented to the jury, the complained-about testimony was harmless beyond a reasonable doubt.
Defendant's second attack on the victim impact evidence concerns the application of 921.141(7) to defendant's crime. He claims that such application was a violation of the ex post facto clauses of the United States and Florida Constitutions since the murders were on February 7, 1992, and subsection seven of section 921.141 did not go into effect until July 1, 1992. We do not agree. To the contrary, we approve the Fourth District Court of Appeal's decision on this point in State v. Maxwell, 647 So.2d 871 (Fla. 4th DCA 1994), in which the district court found our decision in Glendening v. State, 536 So.2d 212 (Fla. 1988), cert. denied, 492 U.S. 907, 109 S.Ct. 3219, 106 L.Ed.2d 569 (1989), to be instructive. Section 921.141(7) only relates to the admission of evidence and is thus procedural. Id. at 215. Therefore, application of section 921.141(7) in the present case does not violate the prohibition against ex post facto laws.
Defendant on appeal argues that the jury instruction in respect to the aggravating factor of cold, calculated, and premeditated was deficient because it was vague. In the trial court, however, defendant did not object to the instruction on the ground that it was vague but on the ground that it was redundant. Defense counsel did state, "I would object to that on those grounds; constitutional grounds, basically."
In Jackson v. State, 648 So.2d 85 (Fla. 1994), we held that a general objection to a similar instruction was not sufficient and that a claim that the instruction is unconstitutionally vague is procedurally barred unless a specific objection on that ground was made at trial. Therefore, defendant's objection is procedurally barred.
Next, defendant contends that the trial court erred by finding in its sentencing order that the crimes were committed in a cold, calculated, and premeditated manner without any pretense of moral or legal justification. We affirm the trial court's sentencing order in respect to this aggravator as to the murder of Johnnie Lee. There was clearly sufficient evidence upon which to conclude, as the trial court did, that this murder was a product of a cool and calm reflection sufficient to be the heightened premeditation which is the element of this aggravator.
We cannot agree that the record is sufficient to conclude that the murders of Valerie Davis and Mary Lubin were similarly a product of cool and calm reflection. There is no evidence that when the defendant bought the gun and the bullets, he planned to shoot anyone other than Johnnie Lee. On the other hand, there is substantial evidence that after the murder of Johnnie Lee, the defendant had an abnormal appearance with his eyes bugged out. Defendant's physical and facial appearance was different than it had ever been as reported by witnesses who saw him during the occurrence and who had known him all their lives (in excess of 20 years). There was also evidence that the murder of Valerie Davis was a product of rage brought about by a combination of drug dealing, for which the two had been arrested a short time before the murders, and the separation between defendant and Davis after living together and having a child. There was evidence that the murder of Mary Lubin was a product of rage stemming from Mary Lubin not wanting the defendant to any longer live with her daughter. For the reasons stated in Richardson v. State, 604 So.2d 1107 (Fla. 1992) (where the element of calm and cool reflection was not present, the factor of cold, calculated premeditation was not permissible), we cannot affirm the cold, calculated, and premeditated aggravator in respect to the murders of Valerie Davis and Mary Lubin.
Defendant contends that the other aggravator found by the court, specifically that each capital felony served as a previous conviction for the others and each of the first-degree murder charges and the attempted first-degree murder charge was considered a felony involving the use of violence *440 to the person for the purposes of aggravation of the other first-degree murder charges, should not be upheld on the basis that such aggravator, by its wording, requires previous convictions. We have previously rejected defendant's contentions and held that contemporaneous convictions prior to sentencing can qualify as previous convictions in multiple conviction situations. Zeigler v. State, 580 So.2d 127 (Fla. 1991), cert. denied, 502 U.S. 946, 112 S.Ct. 390, 116 L.Ed.2d 340 (1991); Wasko v. State, 505 So.2d 1314 (Fla. 1987). We therefore reject defendant's contention and reiterate our prior holdings on this point.
The trial judge followed the requirements of our opinion in Campbell v. State, 571 So.2d 415 (Fla. 1990), in which we specifically mandated that the sentencing court must expressly evaluate in its written order each mitigating circumstance proposed by the defendant. The relative weight given each mitigating factor is within the judgment of the sentencing court. Id. at 420. It is the function of the sentencing court to then weigh the aggravating and mitigating circumstances against each other. While there was no mitigating evidence presented during the penalty phase, the trial court weighed the aggravators against the mitigating factors proven during the guilt phase and presented at the sentencing hearing, and decided to follow the twelve-to-zero advice of the advisory jury that death should be imposed for the murders of Johnnie Lee, Valerie Davis, and Mary Lubin.
Finally, defendant argues that the death penalty is not proportional in this instance. We disagree. The imposition of the death penalty is not disproportionate to other cases decided by this Court. See Porter v. State, 564 So.2d 1060 (Fla. 1990), cert. denied, 498 U.S. 1110, 111 S.Ct. 1024, 112 L.Ed.2d 1106 (1991).
We have carefully reviewed defendant's remaining claims and find them to be without merit.
We affirm the sentences of the trial court. While we cannot affirm the cold, calculated, and premeditated finding in respect to the murders of Valerie Davis and Mary Lubin, we conclude that the existence of the one aggravator of the conviction of two other capital offenses and one violent felony against a person in each instance is sufficient to outweigh the little weight given to the mitigating factors set forth in the sentencing order. State v. Dixon, 283 So.2d 1 (Fla. 1973), cert. denied, 416 U.S. 943, 94 S.Ct. 1950, 40 L.Ed.2d 295 (1974); Duncan v. State, 619 So.2d 279 (Fla.), cert. denied, ___ U.S. ___, 114 S.Ct. 453, 126 L.Ed.2d 385 (1993). It is well settled that it is not the number of aggravating and mitigating circumstances that is critical but the weight to be given each of them. Herring v. State, 446 So.2d 1049 (Fla.), cert. denied, 469 U.S. 989, 105 S.Ct. 396, 83 L.Ed.2d 330 (1984), receded from on other grounds, Rogers v. State, 511 So.2d 526 (Fla. 1987), cert. denied, 484 U.S. 1020, 108 S.Ct. 733, 98 L.Ed.2d 681 (1988).
It is so ordered.
OVERTON, SHAW, HARDING and WELLS, JJ., concur.
KOGAN, J., concurs in part and dissents in part with an opinion, in which ANSTEAD, J., concurs.
ANSTEAD, J., concurs in part and dissents in part with an opinion, in which GRIMES, C.J., concurs.
KOGAN, Justice, concurring in part, dissenting in part.
I generally agree with Justice Anstead's observations. I write separately because the use of victim-impact evidence can pose a constitutional problem if misused. While I agree with Justice Anstead that any error was slight and harmless here, I do not believe the courts can or should encourage the use of victim-impact evidence when it in effect may invite jurors to gauge the relative worth of particular victims' lives. All human life deserves dignity and respect, including in the penalty phase of a capital trial. This includes victims of high stature in the community as well as those in humbler circumstances. It would not be especially difficult for one or the other side in a criminal case to prey on the prejudices some jurors may harbor about particular classes of victims. Subtle appeals to racism, caste-based notions, or similar concerns clearly would undermine the fundamental objective of a criminal trial  achieving justice. If the effect is either to *441 aggravate the case for one type of victim but mitigate it for another in similar circumstances, then the Constitution is violated. The victim's high stature in the community is not a legal aggravating factor, just as a victim's minority status does not lawfully mitigate the crime. In this sense, all human life stands at equal stature before the law. Courts must be vigilant to see that this equality is not undermined.
ANSTEAD, J., concurs.
ANSTEAD, Justice, concurring in part, dissenting in part.
I concur in the majority's affirmance of all of the convictions, and in the affirmance of the death penalty imposed as to the murder of Johnnie Lee. In that case we have upheld the finding by the trial court of the existence of substantial aggravation, including a finding that the murder was committed in a cold, calculated, and premeditated manner. However, having eliminated that aggravation as a valid factor in the other murders, I do not agree that we can conclude beyond a reasonable doubt that the death penalty is the only possible sentence, especially in view of the substantial mitigation noted in the majority opinion. On this issue, this case is similar to Crump v. State, 622 So.2d 963 (Fla. 1993), where we also struck the cold, calculated, and premeditated aggravation, leaving only the aggravation of a prior murder, and remanded for resentencing.
I also concur in the majority's holding that any error in the admission of victim impact evidence was harmless in this case. I do so for two main reasons. First, this evidence was slight, consisting of only five pages of transcript. Second, defense counsel's approach to the jury at sentencing was tantamount to a concession of the existence and validity of the State's case for aggravation. The only substantial appeal to the jury by defense counsel was directed to the efficacy of the death penalty, rather than the merits of its invocation in this particular case.
GRIMES, C.J., concurs.
NOTES
[1] § 921.141(5)(b), Fla. Stat. (1991).
[2] § 921.141(5)(i), Fla. Stat. (1991).
[3] In mitigation the court found the following statutory factors: (1) Windom had no significant history of prior criminal activity (§ 921.141(6)(a), Fla. Stat. (1991)); (2) the capital felony was committed while Windom was under the influence of extreme mental or emotional disturbance (§ 921.141(6)(b), Fla. Stat. (1991)); and (3) Windom acted under extreme duress or under the substantial domination of another person (§ 921.141(6)(e), Fla. Stat. (1991)). The following nonstatutory mitigators were considered: (1) Windom assisted people in the community; (2) Windom was a good father; (3) Windom saved his sister from drowning; and (4) Windom saved another individual from being shot during a dispute over $20.
[4] The remaining four claims are as follows: (1) the trial court erred in its instruction on reasonable doubt; (2) the trial court erred in denying defendant's requested special jury instructions at the penalty phase; (3) the trial court improperly rejected mitigating evidence by giving such little, if any, weight; and (4) section 921.141, Florida Statutes is unconstitutional.