# Supreme Court of Florida

————————

No. SC2025-1179

————————

**CURTIS WINDOM,**
Appellant,

vs.

**STATE OF FLORIDA,**
Appellee.

————————

No. SC2025-1182

————————

**CURTIS WINDOM,**
Petitioner,

vs.

**SECRETARY, DEPARTMENT OF CORRECTIONS,**
Respondent.

August 21, 2025

PER CURIAM.

Thirty-three years ago, in 1992, a jury convicted Curtis Windom of three counts of first-degree murder and one count of attempted first-degree murder. The trial court sentenced Windom

to death for the former convictions, and to twenty-two years' imprisonment for the latter one. We upheld his convictions and sentences in *Windom v. State* (*Windom I*), 656 So. 2d 432 (Fla. 1995).

On July 29, 2025, Governor DeSantis signed Windom's death warrant, with a scheduled execution date of August 28, 2025. Windom then filed his fifth[1] successive motion for postconviction relief, raising two claims: (1) that he was unconstitutionally deprived of his right to competent trial counsel, and (2) that he was deprived of his right to due process by the postconviction court's scheduling order. The postconviction court summarily denied these claims, as well as Windom's "emergency motion for stay" in which he raised an additional newly discovered evidence claim. Windom timely appealed. We have jurisdiction, *see* art. V, § 3(b)(1), Fla. Const., and affirm the postconviction court's summary denial of Windom's successive postconviction motion. And we further deny

---

1. Though Windom filed multiple pro se postconviction motions that were stricken, this appears to be his fifth successive postconviction motion.

Windom's petition for writ of habeas corpus, *see id.* § 3(b)(9), and

motions for stay and oral argument.

**I.**

We recounted the horrific facts of this case in great detail in

Windom's direct appeal:

> Jack Luckett testified that he had talked with the Defendant the morning of the shootings. In their discussion, the Defendant asked Jack if Johnnie Lee had won money at the dog track and Jack said, "Yes, $114." The Defendant said Johnnie Lee owed him $2,000. When the Defendant learned Johnnie had won money at the track, he said to Jack, "My nigger, you're gonna read about me." He further said that he was going to kill Johnnie Lee. That same day at 11:51 a.m. (per the sales slip and the sales clerk) the Defendant purchased a .38 caliber revolver and a box of fifty .38 caliber shells from Abner Yonce at Walmart in Ocoee. Mr. Yonce remembered the sale and recalled there was nothing unusual about the Defendant and that he was "calm as could be."
> Within minutes of that purchase, the Defendant pulled up in his car next to where Johnnie Lee was standing talking to two females and Jack Luckett on the sidewalk. All three testified that the Defendant's car was close and the Defendant leaned across the passenger side of the vehicle and shot Johnnie Lee twice in the back. (Johnnie Lee's back was towards the Defendant and there was no evidence he even saw the Defendant.) . . . After the victim fell to the ground, the Defendant got out of the car, stood over the victim and shot him twice more from the front at very close range. . . . The Defendant then ran towards the apartment where Valerie Davis, his girlfriend and mother of one of his children, lived. (The Defendant lived with Valerie Davis off and on.) She was

on the phone, and her friend Cassandra Hall had just arrived at the apartment and was present when the Defendant shot Valerie once in the left chest area within seconds of arriving in the apartment and with no provocation. . . .

From the apartment, the Defendant went outside, encountered Kenneth Williams on the street, and shot him in the chest at very close range. Mr. Williams saw the gun but did not think the Defendant would shoot him. Right before he was shot, he turned slightly and deflected the bullet somewhat. Although he was in the hospital for about 30 days and the wound was serious, he did not die. He said the Defendant did not look normal—his eyes were "bugged out like he had clicked." . . .

From there, the Defendant ended up behind Brown's Bar where three guys, including the Defendant's brother, were trying to take the weapon from him. By that time, Valerie's mother [Mary Lubin] had learned that her daughter had been shot, so she had left work in her car and was driving down the street. The Defendant saw her stop at the stop sign, went over to the car where he said something to her and then fired at her, hitting her twice, and killing her.

*Windom I*, 656 So. 2d at 435 (omissions in original).

After convicting Windom of the crimes indicated above, the jury unanimously recommended sentences of death. And in sentencing Windom as recommended by the jury for the first-degree murders, the trial court specifically found two aggravators for each murder conviction: (1) the cold, calculated, and premeditated (CCP) aggravator, and (2) the prior violent felony conviction aggravator.

- 4 -

While we affirmed the judgments and sentences on direct appeal, *see Windom I*, 656 So. 2d at 440, *cert. denied*, 516 U.S. 1012 (1995), we struck the circuit court's finding that the CCP aggravator was applicable to the murders of Valerie Davis and Mary Lubin.

Windom then filed his initial postconviction motion, followed by an amended motion, raising twenty-one claims. Following an evidentiary hearing on multiple claims, the postconviction court denied relief. We affirmed, and we also denied an accompanying petition for writ of habeas corpus. *See Windom v. State* (*Windom II*), 886 So. 2d 915 (Fla. 2004).

Of particular relevance here, we affirmed the postconviction court's conclusion that trial counsel's decision not to present mental health evidence was not prejudicial because it foreclosed the prosecution from presenting highly prejudicial evidence of Windom's drug dealing and motive to murder Davis and Lubin, both of whom may have been police informants. *Id.* at 922-24, 928. Additionally, we affirmed the summary denial of Windom's claim that Florida's lack of standards for capital counsel led to the trial court's tolerance of an incompetent attorney. *Id.* at 920 n.5.

- 5 -

Later, and also relevant to the instant proceeding, we affirmed the denial of a successive postconviction motion in which Windom raised an untimely and procedurally barred *Brady*[2] claim concerning his discovery that State's witness Jack Luckett had a pending felony charge when he testified. *Windom v. State* (*Windom III*), No. SC16-1371, 2017 WL 3205278, at *2 (Fla. July 28, 2017).

A flurry of other state and federal challenges by Windom ensued over the years. *See Windom v. Sec'y, Fla. Dep't of Corr.*, No. 6:04-cv-1378-ORL-28KRS, 2007 WL 9725062 (M.D. Fla. Nov. 1, 2007) (denying federal habeas relief, including ineffective assistance of trial counsel claims considered in *Windom II*); *Windom v. Sec'y, Dep't of Corr.*, 578 F.3d 1227 (11th Cir. 2009) (affirming denial of habeas following oral argument), *cert. denied*, 559 U.S. 1051 (2010); *Windom v. State*, 160 So. 3d 901 (Fla. 2015) (dismissing pro se appeal); *Windom v. State*, 234 So. 3d 556 (Fla.) (denying *Hurst*[3] claim), *cert. denied*, 586 U.S. 860 (2018); *Windom v. State*, No.

---

2. *Brady v. Maryland*, 373 U.S. 83 (1963).

3. *Hurst v. State*, 202 So. 3d 40 (Fla. 2016), *receded from in part by State v. Poole*, 297 So. 3d 487 (Fla. 2020).

SC18-1923, 2018 WL 6326237 (Fla. Dec. 4, 2018) (dismissing pro se appeal); *In re Curtis L. Windom, Sr.*, No. 13-12004-P (11th Cir. June 3, 2013) (denying permission to file successive habeas to raise the *Brady* claim considered in *Windom III*); *In re Curtis L. Windom, Sr.*, No. 14-12411-P (11th Cir. June 26, 2014) (same); *In re Curtis L. Windom, Sr.*, No. 19-11357-P (11th Cir. May 1, 2019) (same). Each time, his challenges failed.

The instant appeal follows.

## II.

We review de novo the postconviction court's summary denial of Windom's successive Florida Rule of Criminal Procedure 3.851 motion. "Summary denial of a successive rule 3.851 motion is appropriate if 'the motion, files, and records in the case conclusively show that the movant is entitled to no relief.' " *Rogers v. State*, 409 So. 3d 1257, 1262 (Fla. 2025) (citation omitted), *cert. denied*, No. 24-7169, 2025 WL 1387828 (U.S. May 14, 2025). We will affirm the denial of successive claims that are procedurally barred, untimely, legally insufficient, or refuted by the record. *See Hutchinson v. State*, No. SC2025-0517, 50 Fla. L. Weekly S71, S72, 2025 WL

1198037, at *3 (Fla. Apr. 25, 2025), *cert. denied,* 145 S. Ct. 1980 (2025).

With limited exceptions, rule 3.851(d)(1) imposes a one-year time limitation on any motion to vacate a final judgment and sentence of death.

Windom attempts to avail himself of two exceptions to this one-year limitation: the new, retroactive constitutional right exception—"the fundamental constitutional right asserted was not established within the period provided for in subdivision (d)(1) and has been held to apply retroactively," Fla. R. Crim. P. 3.851(d)(2)(B); and the newly discovered evidence exception—"the facts on which the claim is predicated were unknown to the movant or the movant's attorney and could not have been ascertained by the exercise of due diligence," Fla. R. Crim. P. 3.851(d)(2)(A). The postconviction court correctly summarily denied the successive motion.

**A.**

**(1)**

First, Windom argues that evolving standards of decency should have been applied to his Sixth Amendment right to counsel.

- 8 -

He asserts that his trial counsel lacked the competence to represent him because, unlike the more exacting standards today, back then, the only standards counsel had to satisfy were the minimums of being licensed and in good standing with The Florida Bar to represent a capital defendant. Windom specifically cites to the adoption of rule 3.112 of the Florida Rules of Criminal Procedure in 1999, which sets forth minimum standards for attorneys in capital cases. *See In re Amend. to Fla. Rules of Crim. Proc.-Rule 3.112 Min. Stds. for Att'ys in Cap. Cases*, 759 So. 2d 610 (Fla. 1999). Rule 3.112 was extended to apply to privately retained counsel[4] in 2002. *In re Amend. to Fla. Rules of Crim Proc.-Rule 3.112 Min. Stds. for Att'ys in Cap. Cases*, 820 So. 2d 185 (Fla. 2002).

But as the postconviction court properly determined, this claim is untimely.[5] Windom cannot avail himself of the benefit of rule 3.851(d)(2)(B)'s new, retroactive constitutional right exception to the one-year time limit. Any argument that constitutional

---

4. Windom's trial counsel, Ed Leinster, was privately retained.

5. Windom does not challenge the postconviction court's conclusion that this claim does not satisfy the newly discovered evidence exception in rule 3.851(d)(2)(A).

provisions should be construed based on "evolving standards of decency" is unavailing because, as acknowledged by Windom, that reasoning has never been applied to the Sixth Amendment right to counsel. It has only been applied to the Eighth Amendment's prohibition on the infliction of cruel and unusual punishments. *See Trop v. Dulle*s, 356 U.S. 86, 100-01 (1958) ("The [Eighth] Amendment must draw its meaning from the evolving standards of decency that mark the progress of a maturing society."); *Atkins v. Virginia*, 536 U.S. 304, 311-12 (2002) (quoting *Trop*, 356 U.S. at 100-01). And Windom cannot use the timeliness exception in rule 3.851(d)(2)(B) to affirmatively establish a new and retroactive constitutional right. *See Carroll v. State*, 114 So. 3d 883, 886 (Fla. 2013) ("What Carroll is seeking is the recognition of a new fundamental constitutional right, which is not properly pled under rule 3.851(d)(2)(B)." (citing *Waterhouse v. State*, 82 So. 3d 84, 97 (Fla. 2012))).

We thus affirm the postconviction court's finding that Windom's first claim is untimely.

## (2)

Windom's arguments are also procedurally barred. In 2004, in his first postconviction motion, he raised the claim that Florida lacks standards for counsel in capital cases, violating the Fifth, Sixth, Eighth, and Fourteenth Amendments. *See Windom II*, 886 So. 2d at 920 n.5. We affirmed the postconviction court's 2001 summary denial of this argument in its entirety on appeal. *See id.* at 926, 931. We also addressed, and rejected, other claims Windom now raises again—that trial counsel, Ed Leinster, rendered ineffective assistance for failing to investigate mental health experts and fact witnesses for both the guilt and penalty phases, and that Leinster was allegedly intoxicated at trial. *Id.* at 921-29.

The postconviction court properly characterized Windom's current arguments as a "repacking of claims." We agree. As we recently reiterated in *Barwick v. State*, "using 'a different argument to relitigate the same issue' . . . is inappropriate." 361 So. 3d 785, 793 (Fla. 2023) (quoting *Medina v. State*, 573 So. 2d 293, 295 (Fla. 1990)). So, this claim was properly denied as procedurally barred.

But even if Windom's current argument regarding counsel's lack of competency based on "evolving standards of decency" could

overcome the re-litigation bar, it is nonetheless still procedurally barred because he could have raised this claim as early as 2002, when rule 3.112 was extended to privately retained counsel and required greater capital counsel qualifications. *See id.* at 795 ("Even if this claim had not been raised in a prior proceeding, it is still procedurally barred because it could have been raised previously." (citations omitted)).

For all these reasons, we affirm the postconviction court's finding that Windom's first claim is procedurally barred.

**(3)**

Finally, Windom's claim is meritless. The committee's comments to the standards announced in rule 3.112 reflect that the rule is "not intended to establish any independent legal rights" and that the *Strickland v. Washington*, 466 U.S. 668 (1984), standard would still apply to claims of inadequacy of representation by counsel. *In re Amend. to Fla. Rules of Crim. Proc.-Rule 3.112*, 820 So. 2d at 198. And we have since relied on this language in rejecting a claim of per se ineffectiveness. *See Cox v. State*, 966 So. 2d 337, 358 n.10 (Fla. 2007) ("Cox asserts that defense counsel failed to meet the minimum requirements for death penalty co-

counsel outlined in . . . [rule] 3.112 . . . . Although it is true that one attorney did not meet the minimum standards . . . this does not amount to per se ineffective assistance of counsel. The comment to rule 3.112 demonstrates that the rule was not intended to create an independent cause of action . . . .").

In this case, Windom's ineffective assistance claims were fully litigated in *Windom II* and found meritless under the *Strickland* standard. Nothing else is required.[6]

The postconviction court also properly rejected Windom's argument that rule 3.112 should be retroactively applied. Windom's retroactivity argument is contrary to the text of rule 3.112, which states that it applies to "*all* defense counsel handling capital trials and capital appeals, who are appointed or retained *on or after July 1, 2002.*" Fla. R. Crim. P. 3.112(c) (emphasis added). The requirements in rule 3.112 were not extended to privately

---

6. We also reject Windom's invitation to extend the application of the "evolving standards of decency" doctrine. *Trop* made it clear that the doctrine applies to the Eighth Amendment, and no other court, to our knowledge, has yet extended the doctrine to interpret the Sixth Amendment. Windom candidly acknowledges this as well. We decline to be the first.

retained counsel until 2002. *See In re Amend. to Fla. Rules of Crim. Proc.-Rule 3.112*, 820 So. 2d at 195. Thus, the rule was clearly intended to have *prospective* application.

Windom counters that fundamental fairness supports the retroactive application of the rule's standards to his trial representation, citing *Witt v. State*, 387 So. 2d 922, 925 (Fla. 1980) ("Considerations of fairness and uniformity make it very 'difficult to justify depriving a person of his liberty or his life, under process no longer considered acceptable and no longer applied to indistinguishable cases.'" (citation omitted)). But his fundamental fairness argument fails because, as we said above, the rule 3.112 standards were not intended to establish any independent legal rights.

Framing Leinster's alleged deficiencies as resulting from lack of proper qualifications to represent a capital defendant, Windom again argues, as he did in previous cases before this Court, that the outcome of his trial and penalty phase would have been different had Leinster developed and presented additional witnesses and evidence to show that Windom had brain damage and was legally insane at the time of the shootings.

But as we held in *Windom II*, had Leinster put on evidence in the guilt phase to support an insanity defense, he would have opened the door to highly damaging testimony and evidence that Windom was a drug dealer and that his drug operations may have motivated at least two of the murders, as some or all of his victims were police informants. 886 So. 2d at 923. Also, evidence of Windom's conduct and planning on the day of the murders refuted rather than supported the argument that the acts were the product of brain damage or delusion. *Id.* at 926. Windom also was not prejudiced by Leinster's failure to put on additional mental health mitigation in the penalty phase because this evidence would have opened the door to, and been overwhelmingly rebutted by, the State's evidence of Windom's drug enterprise. *Id.* at 928.[7]

Finally, Windom again claims that the outcome would have been different had the jury heard about Luckett's undisclosed pending felony given the State's allegedly weak case for

---

7. The postconviction court's order does not address Windom's argument that Leinster was "actually incompetent" under the standards now embodied in rule 3.112. However, Windom has not shown that he suffered prejudice from the alleged deficiencies he identifies in Leinster's performance.

premeditation. Again, this information had no reasonable likelihood of changing the outcome. As we said in *Windom III*, Luckett's testimony was largely corroborated by other witnesses and evidence, and Windom did, in fact, impeach him with three other prior felonies. 2017 WL 3205278, at *1-2. Additionally, had the evidence of Luckett's pending charge been introduced, the State could have rehabilitated Luckett with prior consistent statements. *Id.*

Accordingly, we affirm the postconviction court's denial of Windom's "evolving standards of decency" claim as untimely, procedurally barred, and meritless.

### B.

Windom next argues that the postconviction court's abbreviated scheduling order—and now, this Court's scheduling order, too—violates his right to due process. As evidence of this due process violation, Windom argues that he only learned of "newly discovered evidence" at the *Huff*[8] hearing—to wit, statements from some of the victims' family members from his 2013 clemency

---

8. *Huff v. State*, 622 So. 2d 982 (Fla. 1993).

- 16 -

hearing that they opposed Windom's death sentence—and had to raise this claim in an emergency motion for stay below. The postconviction court was right to summarily deny this claim.

**(1)**

The crux of Windom's argument on this issue is that he was denied a meaningful opportunity to be heard. Over his counsel's objection and request for one more day, the postconviction court required the successive postconviction motion to be filed by August 3, 2025, at 11:00 a.m., less than five days after notice of the death warrant. Noting that visits to inmates awaiting execution were partially curtailed by the upcoming execution of another inmate, counsel argued that the proposed deadline would not allow her enough time to interview Windom or to review pleadings with him after their August 1 meeting at the prison.[9]

The postconviction court denied this claim on the merits, explaining that Windom was given notice of the schedule, had an

---

9. Below, counsel also argued that this time would be insufficient to allow mental health expert Dr. Hyman Eisenstein to interview Windom and provide an affidavit of his findings. However, this argument has not been raised on appeal.

opportunity to respond, and, in fact, did so by objecting. Further, the postconviction court found that the expedited schedule did not violate Windom's right to due process by obstructing his ability to present evidence. We agree. In warrant proceedings, "[d]ue process requires that a defendant be given notice and an opportunity to be heard on a matter before it is decided." *Asay v. State*, 210 So. 3d 1, 27 (Fla. 2016) (citing *Huff*, 622 So. 2d at 983). Windom was given notice and a full opportunity to be heard regarding the deadlines in the scheduling order.

Importantly, we have rejected similar claims to this one and found that an expedited warrant litigation schedule does not deprive a defendant of his right to due process. *See Zakrzewski v. State*, No. SC2025-1009, 50 Fla. L. Weekly S218, S220, 2025 WL 2047404, at *5 (Fla. July 22, 2025) (rejecting claim that expedited process of warrant litigation deprived defendant of his due process rights), *cert. denied*, No. 25-5194, 2025 WL 2155601 (U.S. July 30, 2025); *Bell v. State*, No. SC2025-0891, 50 Fla. L. Weekly S155, S163, 2025 WL 1874574, at *17 (Fla. July 8, 2025), *cert. denied*, No. 25-5083, 2025 WL 1942498 (U.S. July 15, 2025); *Tanzi v. State*, 407 So. 3d 385, 393 (Fla.), *cert. denied*, 145 S. Ct. 1914 (2025).

After over thirty years of litigation, Windom has been heard and his case has been thoroughly and conscientiously reviewed at every stage, including this one.  Thus, we reject his claim.

**(2)**

Undeterred, Windom asserts that he established a due process violation in his scheduling order by virtue of his "motion for emergency stay of execution," in which he raised claims based on mitigating information presented at his 2013 clemency hearing[10]—that the victims' families wished for Windom's life to be spared from the death penalty.[11]  He alleges he only learned of this information for the first time at the *Huff* hearing, and, thus, this is newly

---

10.  Windom raised three claims below: (1) the information from the three victims' families is newly discovered evidence; (2) the State violated its obligations under *Brady* during postconviction by failing to disclose the victims' family members' wishes; and (3) the newly discovered evidence establishes that the death penalty as applied to Windom is unconstitutional.  On appeal, Windom does not challenge the postconviction court's conclusion on claim (2), that the State has no obligation under *Brady* in postconviction proceedings.  *See Dailey v. State*, 279 So. 3d 1208, 1217 (Fla. 2019) (citing *Dist. Att'y Off. for Third Jud. Dist. v. Osborne*, 557 U.S. 52, 68-69 (2009), for the proposition that the Supreme Court rejected "*Brady*'s applicability at the postconviction stage").

11.  These statements are video recordings and letters that were prepared in support of Windom's bid for clemency.

discovered evidence requiring additional time. The State argued below that Windom's newly discovered evidence claim is untimely.

Recognizing the motion is controlled by rule 3.851, the postconviction court analyzed it as a newly discovered evidence claim under the two-factor test reiterated in *Dailey v. State*, 279 So. 3d 1208, 1212-13 (Fla. 2019) ("In order to set aside a conviction based on newly discovered evidence . . . [1] the evidence must have been unknown by the trial court, by the party, or by counsel at the time of trial, and it must appear that defendant or his counsel could not have known [of it] by the use of diligence . . . [and 2] the evidence must be of such nature that it would probably produce an acquittal on retrial." (internal quotation marks and citations omitted)). Based on caselaw, the postconviction court agreed with Windom that this evidence was "new" under the first prong because it could not have been known at the time of trial, but found it would probably not produce an acquittal on retrial under the second prong because the evidence was probably inadmissible. *Id.* ("However . . . 'no relief is warranted' unless the evidence would be admissible at trial." (quoting *Sims v. State*, 754 So. 2d 657, 660 (Fla. 2000))).

From our de novo review of the record, we conclude that Windom's claim is untimely because the allegedly "new" information was ascertainable long ago by the exercise of due diligence. *See* Fla. R. Crim. P. 3.851(d)(2)(A). Windom offers no convincing argument why either he or his attorney could not have attempted to ascertain those views at least a decade before his death warrant was signed.

But even assuming this claim were timely and that this "evidence" is "new," Windom argues that the postconviction court failed to consider that it would be admissible as mitigation at the penalty phase and, thus, be "of such a nature that it would . . . probably yield a less severe sentence." *Davis v. State*, No. SC2024-1128, 2025 WL 1970014, at *5 (Fla. July 17, 2025) (citations omitted).

We disagree. The facts as firmly established at Windom's guilt phase were that Windom went on a shooting spree, shooting four people and killing three. Thus, at the penalty phase, the prior violent felony aggravator—which is "one of the most weighty aggravating circumstances in Florida's statutory sentencing scheme," *Bright v. State*, 299 So. 3d 985, 1011 (Fla. 2020) (citations

omitted)—was more than supported in regard to each of the three murder victims. Further, the evidence also showed that Windom planned the murder of the first victim, Lee, because Lee owed Windom money, thus supporting the finding of the CCP aggravator.

Given this significant aggravation, even adding the victims' families' preferences to Windom's mitigation presented during his original penalty phase,[12] we reject the argument that it would probably have produced a less severe sentence. As we said in *Windom I*, "we conclude that the existence of the one aggravator of the conviction of two other capital offenses and one violent felony against a person in each instance is sufficient to outweigh the little weight given to the mitigating factors set forth in the sentencing order." 656 So. 2d at 440 (citations omitted). "It is well settled that

---

12. *See Windom I*, 656 So. 2d at 435 n.3 ("In mitigation the [sentencing] court found the following statutory factors: (1) Windom had no significant history of prior criminal activity . . . ; (2) the capital felony was committed while Windom was under the influence of extreme mental or emotional disturbance . . . ; and (3) Windom acted under extreme duress or under the substantial domination of another person . . . . The following nonstatutory mitigators were considered: (1) Windom assisted people in the community; (2) Windom was a good father; (3) Windom saved his sister from drowning; and (4) Windom saved another individual from being shot during a dispute over $20.").

it is not the number of aggravating and mitigating circumstances that is critical but the weight to be given each of them." *Id.* (citations omitted).

Thus, we affirm the postconviction court's denial of Windom's newly discovered evidence claim raised in his "emergency motion to stay," and decline to find this to be "evidence" of a due process violation in the postconviction court's scheduling order. We likewise affirm the postconviction court's denial of Windom's piggyback claim, that Florida's sentencing scheme is unconstitutional as applied to him, as procedurally barred.

## III.

Finally, Windom petitions this Court for a writ of habeas corpus, raising two claims for equitable relief. First, he claims a manifest injustice will occur if this Court does not reconsider *Windom II*, 886 So. 2d 915, and conclude that he was deprived of Sixth Amendment counsel at trial due to his counsel's inexperience and failure to investigate Windom's mental health for possible defenses and mitigation. Windom raises multiple subclaims as well, including a *Brady* violation that appears to be materially the

same claim as the one raised and rejected in his second successive postconviction motion. *See Windom III*, 2017 WL 3205278, at *2.

We deny this claim and all subclaims as procedurally barred. "[H]abeas corpus petitions are not to be used for additional appeals on questions which could have been, should have been, or were raised on appeal or in a rule 3.850 motion." *Mann v. State*, 112 So. 3d 1158, 1164 (Fla. 2013) (quoting *Wyatt v. State*, 71 So. 3d 86, 112 n.20 (Fla. 2011)); *Gaskin v. State*, 361 So. 3d 300, 309 (Fla. 2023) ("Habeas corpus is not to be used to litigate or relitigate issues which could have been, should have been, or were previously raised." (citing *Breedlove v. Singletary*, 595 So. 2d 8, 10 (Fla. 1992))).

Furthermore, as explained above and in *Windom II*, because Windom's trial counsel did not present mental health evidence, the State was ultimately foreclosed from presenting even more prejudicial evidence of Windom's drug dealing and motive to murder his girlfriend and her mother, both of whom he suspected were police informants. "Trial counsel is not deficient for failing to present additional testimony that would have informed the jury of

negative information about the defendant." *Windom II*, 886 So. 2d at 923 (citing *Breedlove v. State*, 692 So. 2d 874, 878 (Fla. 1997)).

Likewise, Windom's second claim, that a manifest injustice will occur because the death penalty is unconstitutional as applied to him, is procedurally barred. Windom asserts, among other things, that the prior violent felony aggravator should not have been applied to the murder of Johnnie Lee. But this claim was previously raised and rejected on direct appeal. *See Windom I*, 656 So. 2d at 440 (rejecting Windom's argument and reaffirming prior holdings that "contemporaneous convictions prior to sentencing can qualify as previous convictions in multiple conviction situations" (citations omitted)); *see also Gonzalez v. State*, 136 So. 3d 1125, 1151 (Fla. 2014) ("Under Florida law, such contemporaneous convictions can serve as an appropriate basis for the prior violent felony aggravator." (citations omitted)). Further, as already noted, "the prior violent felony aggravator is one of the most weighty aggravating circumstances in Florida's statutory sentencing scheme." *Bright*, 299 So. 3d at 1011.

We thus remain confident in the outcome of Windom's trial and penalty phase and deny his petition as procedurally barred.

## IV.

We affirm the summary denial of Windom's successive motion for postconviction relief and deny his petition for writ of habeas corpus. We also deny his motions for stay of execution and oral argument. No petition for rehearing will be entertained by this Court. The mandate shall issue immediately.

It is so ordered.

MUÑIZ, C.J., and CANADY, LABARGA, COURIEL, GROSSHANS, FRANCIS, and SASSO, JJ., concur.

An Appeal from the Circuit Court in and for Orange County,
     Michael Kraynick, Judge – Case No. 481992CF001305000AOX
And an Original Proceeding – Habeas Corpus

Eric Pinkard, Capital Collateral Regional Counsel, Ann Marie Mirialakis, Assistant Capital Collateral Regional Counsel, and Melody Jacquay-Acosta, Assistant Capital Collateral Regional Counsel, Middle Region, Temple Terrace, Florida,

     for Appellant/Petitioner

James Uthmeier, Attorney General, Tallahassee, Florida, Rick A. Buchwalter, Senior Assistant Attorney General, and Timothy A. Freeland, Special Counsel, Assistant Attorney General, Tampa, Florida,

     for Appellee/Respondent